GTE COMMUNICATIONS SYSTEMS
CORPORATION, Relator,

v.

The Honorable Martha TANNER,
Judge, Respondent.

No. D–3089.

Supreme Court of Texas.

June 30, 1993.

Ruth Greenfield Malinas, J. Michael Ezzell, Thomas H. Crofts, Jr., San Antonio, for relator.

Rene R. Barrientos, Pat Maloney, Sr., Timothy Patton, San Antonio, for respondent.

## OPINION

HECHT, Justice.

In this original mandamus proceeding, relator GTE Communication Systems Corporation, a defendant in pending litigation, seeks review of sanctions imposed against it by the respondent district court. The district court concluded that four of GCSC's amended answers, its motion for summary judgment, and two affidavits in support of the motion were groundless and filed in bad faith, in violation of Rule 13, TEX.R.CIV.P. The district court also concluded that GCSC failed to produce a certain document in response to a discovery request, in violation of Rule 215, TEX. R.CIV.P. As sanctions, the district court struck GCSC's pleadings and ordered it to pay plaintiffs $150,000 in attorney fees. We granted leave to file application for writ of mandamus to review these rulings. For reasons that follow, we conditionally grant the writ.

### I

The litigation pending in the district court arises out of the following circumstances. Rene Duran and Jesse Ramirez, Jr. were riding bicycles along the sidewalk outside a grocery store when Duran struck a sharp-edged metal cable which had been stretched across the sidewalk at the level of his neck. Duran was nearly decapitated by the cable and died of his injuries. At the shock of this accident, Ramirez fell from his bicycle and sustained injuries. The cable, which was several feet long, had been made by unwinding the 18″ flexible sheath that protected the cord of electric wires connecting a telephone handset to the body of a pay telephone mounted on the wall outside the grocery store. Police investigating Duran's death obtained information that a young man, the grandson of the proprietor of the grocery store, had stretched the cable across the sidewalk as a prank. Before the young man could be

arrested and charged with murder, he committed suicide.

Duran's estate and survivors, along with Ramirez and his next friends, filed suit claiming that the telephone was unreasonably dangerous as designed, manufactured and distributed, because the metal sheath covering the telephone handset cord could easily be disassembled and stretched into a cable. In their original petition, plaintiffs alleged that defendant ATS Pay Phone Supply, Inc., had manufactured the telephone, and did not name GTE Communication Systems Corporation as a defendant. Subsequently, plaintiffs amended their petition to add GCSC as a defendant, alleging that it was the manufacturer of the telephone. In answer to plaintiffs' allegations, GCSC denied that it had designed, manufactured, marketed, sold or distributed the sheathed cord.

After some discovery had been conducted, GCSC moved for summary judgment on several grounds, including: that it had not designed, manufactured, or marketed the sheathed cord that caused Duran's injuries; that the sheath was not defective; that if the sheath was unreasonably dangerous, it was solely because it had been altered; that the alteration of the sheathed cord which led to plaintiffs' injuries was unforeseeable; and that the criminal conduct involved in stretching the cable across the sidewalk was a new, independent, superseding or intervening cause of plaintiffs' injuries. The first of these grounds was supported by the affidavits of Robert Zimmerman, a long-time employee of GCSC, and Oscar Jiminez, an employee of General Cable Company, a manufacturer of telephone handset cables. Zimmerman's affidavit stated that in manufacturing telephone handsets GCSC had used only sheathed cords made by General Cable, and that if the sheath that injured Duran was not General Cable's, then the handset was not GCSC's. Jiminez' affidavit stated that he had examined the remnants of the sheath that injured Duran and found six distinct differences between those remnants and sheaths manufactured by General Cable. Thus, Jiminez concluded that General Cable had not designed, assembled or distributed the cord involved in the accident.

In response to GCSC's motion for summary judgment, plaintiffs asserted that the identity of the manufacturer of the cord had not been established but was much in dispute. Plaintiffs argued that even if GCSC had not made the cord, it had certainly made the telephone, and that the telephone was defective because the cord was part of it. The trial court denied summary judgment without indicating a specific reason.

Several months later, plaintiffs filed a motion for sanctions requesting that the district court strike GCSC's pleadings and award plaintiffs $150,000 in attorney fees. This motion complained that GCSC's assertions that it was not involved in making and distributing the sheathed cord which injured the plaintiffs had been interposed in bad faith and with knowledge that the assertions were false. The motion also complained that GCSC had failed to produce unspecified documents (actually, as it later developed, a single document) which showed that it knew of the dangers inherent in the cord and could have foreseen the type of accident in which plaintiffs were injured. The motion requested sanctions for discovery abuse and under Rule 13, TEX.R.CIV.P. After an evidentiary hearing the district court granted plaintiffs' motion without indicating the reasons for its ruling.

GCSC petitioned the court of appeals for a writ of mandamus directing the district court to vacate its order. The appeals court conditionally granted its writ, holding that the order did not state "the particulars" of good cause warranting the imposition of sanctions, as required by Rule 13. *GTE Communication Systems Corp. v. Curry*, 819 S.W.2d 652, 653 (Tex.App.—San Antonio 1991, orig. proc.). Immediately after the court of appeals issued its opinion, the district court vacated its original order and, without notice to GCSC, signed a new order prepared by plaintiffs, setting out in 24 paragraphs three reasons for sanctioning GCSC by dismissing its pleadings and assessing $150,000 attorney fees against it.

One reason the district court gave for imposing sanctions was that GCSC had abused the discovery process by failing to produce a certain memorandum prepared by employees of a corporation, GTE of Florida, Inc., for circulation to several departments within that corporation. GTFL, as it is referred to, and GCSC are separate corporations. It is unclear from the record before us how or even whether they are related. The relevant portion of the memorandum states: "Presently GTFL is using over 5,000 handsets per year for maintenance change out because the armored handset cord has been uncoiled by an excessive pull by the end user. Several of these handset failures have resulted in litigation against GTFL." Plaintiffs obtained this memo from another party in the litigation. To show that GCSC was aware of the memo and had failed to produce it, plaintiffs offered as their only evidence the testimony of Charles James, president of ATS, the corporation plaintiffs once alleged was the manufacturer of the sheath. James stated that, based upon his experience in the pay telephone industry, it was "totally inconceivable" that GCSC did not have the memo, and GCSC could compel its production from GTFL because the two corporations were affiliated. The district court "credited" James' testimony and "discredited" GCSC's evidence that it was unaware of the memo and that it had no control over GTFL to compel that entity to produce the memo. James also admitted, however, that he had never worked for GCSC or GTFL and did not actually know whether GCSC had ever been in possession of the GTFL memo.

A second reason the district court gave for imposing sanctions was that GCSC had acted in bad faith in asserting in its summary judgment motion that, as a matter of law, plaintiffs' accident was unforeseeable. The court assumed that GCSC knew of the GTFL memo when it filed its motion for summary judgment, and therefore knew of the problems with the sheathed cord. Possessed of this knowledge, the court reasoned, GCSC's assertion that plaintiffs' accident was unforeseeable as a matter of law was groundless and could only have been made in bad faith. Based upon this analysis, the district court concluded that GCSC's summary judgment motion violated Rule 13.

The district court also concluded, as its third reason for sanctions, that GCSC's amended answers, motion for summary judgment and supporting affidavits in which it denied that it had manufactured the sheathed cord were groundless and brought in bad faith, in violation of Rule 13. The court based this conclusion upon the testimony of two experts, one of whom was James. Plaintiffs first developed this testimony after GCSC's motion for summary judgment was denied and offered it at the hearing on the motion for sanctions. Both witnesses testified that they had concluded from examining the sheath that GCSC had manufactured it. At the hearing, GCSC introduced the affidavits that it had filed in support of its motion for summary judgment, in addition to other evidence that it had not manufactured the sheath.

GCSC again sought a writ of mandamus from the court of appeals, but this time the court denied leave to file the petition. GCSC then moved for leave to file its petition in this Court, which we granted. 36 TEX.SUP.CT.J. 686 (April 3, 1993).

## II

We first consider whether the district court abused its discretion in sanctioning GCSC for abuse of the discovery process under Rule 215, TEX.R.CIV.P. To answer this question we must answer two others: did the district court properly find that GCSC had "possession, custody or control" of the GTFL memo within the meaning of Rule 166b(2)(b), TEX.R.CIV.P., such that GCSC should have produced it; and if so, were the sanctions imposed for the failure to produce the memo just. We conclude that both these questions must be answered negatively.

■ Rule 166b(2)(b), TEX.R.CIV.P., provides in pertinent part:

A person is not required to produce a document or tangible thing unless it is

within the person's possession, custody or control. Possession, custody or control includes constructive possession such that the person need not have actual physical possession. As long as the person has a superior right to compel the production from a third party (including an agency, authority or representative), the person has possession, custody or control.

The phrase, "possession, custody or control", within the meaning of this rule, includes not only actual physical possession, but constructive possession, and the right to obtain possession from a third party, such as an agent or representative. The right to obtain possession is a legal right based upon the relationship between the party from whom a document is sought and the person who has actual possession of it. For example, in *State v. Lowry*, 802 S.W.2d 669, 673–674 (Tex.1991), we held that a request for production directed to the Attorney General required production of documents held by all divisions of that office.

■ A party seeking sanctions has the burden of establishing his right to relief. Thus, when a motion for sanctions asserts that a respondent to a discovery request has failed to produce a document within its possession, custody or control, the movant has the burden to prove the assertion. In this case, plaintiffs failed to meet that burden.

■ The only evidence plaintiffs offered to show that GCSC had actual possession of the memo was the testimony of Charles James that it was "totally inconceivable" to him that GCSC did not have the memo. James admitted, however, that he had never worked for GCSC and had no personal knowledge of whether GCSC had ever had the GTFL memo. The memo has not been located in GCSC's files, no GCSC employee has acknowledged ever seeing it, and there is no circumstantial evidence that would indicate that GCSC ever had the memo. Under these circumstances, James' testimony is no more than mere surmise.

Likewise, there is no evidence that GCSC had constructive possession of the document or a right to compel its production.

Plaintiffs adduced no evidence regarding the corporate relationship between GTFL and GCSC, or any right of the latter to control the former. In fact, the only testimony regarding control was James' speculation regarding the ability of GCSC's parent to control its subsidiaries, assuming both GCSC and GTFL were subsidiaries of the same parent. There is no evidence that GCSC ever actually did exercise control of any type over GTFL.

■ As a rule, the district court's resolution of a factual issue is entitled to deference in a mandamus proceeding and should not be set aside unless it is clear from the record that only one decision could have been reached. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). Here, it is quite clear that from the record before it the district court could not have found that GCSC had possession, custody or control over the GTFL memo within the meaning of Rule 166b(2)(b) such that GCSC should have produced it.

■ Furthermore, even if GCSC had failed to produce the GTFL memo, the district court's sanction of striking GCSC's pleadings would not have been just, as required by Rule 215, TEX.R.CIV.P. "[J]ust sanctions must not be excessive.... [C]ourts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *TransAmerican Natural Gas Corporation v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). The record must reflect that the court considered the availability of lesser sanctions. *Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179, 181 (Tex.1993). Case determinative sanctions may be imposed in the first instance only in exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules. Here, the order which the district court signed stated that lesser sanctions would have been ineffective, but the court did not explain why, and the record does not indicate why. We give no deference to such unsupported conclusions. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 853 (Tex.1992). We fail to see why any number

of lesser sanctions, from fines to contempt, would not have promoted compliance with discovery, if there had been abuse here.

■ The sanctions imposed by the district court precluded GCSC from presenting the merits of its position at trial. Before a court may deprive a party of its right to present the merits of its case because of discovery abuse, it must determine that "a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *Trans-American*, 811 S.W.2d at 918. No such presumption is warranted here. We have concluded that GCSC did not fail to comply with discovery. Even in the district court's view, GCSC only failure was to produce a single document which states that "several ... handset failures have resulted in litigation" without any indication of the nature of such litigation or whether personal injuries had occurred. Even if GCSC had failed to comply with discovery, there is nothing in the record to justify striking GCSC's pleadings as a consequence.

Accordingly, we conclude that the district court clearly abused its discretion in sanctioning GCSC for an abuse of the discovery process under Rule 215.

### III

We next consider whether the district court abused its discretion in imposing sanctions under Rule 13, TEX.R.CIV.P. Rule 13 states in pertinent part:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215–2b, upon the person who signed it, a represented party, or both.

Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law.

■ The district court sanctioned GCSC for filing amended answers, a motion for summary judgment and the supporting affidavits of Zimmerman and Jiminez, which deny that GCSC was involved in making or distributing the sheathed cord which caused plaintiffs' injuries. By its express language, Rule 13 applies only to pleadings, motions and other papers signed by attorneys. Since the Zimmerman and Jiminez affidavits were not signed by GCSC's attorneys, it was a clear abuse of discretion for the district court to base an imposition of sanctions under Rule 13 on them. The issues, then, are whether the district court abused its discretion GCSC's in concluding that GCSC's amended answers and motion for summary judgment are sanctionable, and in striking GCSC's pleadings.

Such papers cannot serve as a basis for sanctions under that portion of Rule 13 quoted above, and on which the district court relied, unless the papers are "groundless" as defined by the rule. Plaintiffs contend, and the district court concluded, that GCSC's amended answers and summary judgment motion are groundless because there is no basis in fact for GCSC's denial that it was involved in the manufacture or distribution of the sheathed cord which caused plaintiffs' injuries. Plaintiffs make two arguments in support of their contention.

Plaintiffs' first argument is that the evidence establishes as a matter of law that GCSC manufactured the sheathed cord, and that GCSC's denial of this fact was therefore groundless. The evidence in the record before us demonstrates that the identity of the manufacturer of the cord is vigorously disputed, and certainly not established as a matter of law. GCSC's ef-

fort to establish that it was not the manufacturer of the cord was not groundless.

■ Plaintiffs' second argument is that because, at the very least, a fact question existed regarding GCSC's involvement in the manufacture and distribution of the sheathed cord, GCSC's assertion in its motion for summary judgment that no such fact question existed was groundless. In other words, plaintiffs argue that a party who knows that material facts are in dispute may be sanctioned for moving for summary judgment. While we do not disagree that the filing of a motion for summary judgment may give rise to sanctions under Rule 13, just as the filing of any other pleading or motion, this is not such a case. At the time GCSC filed its motion, the only evidence adduced by the parties indicated that GCSC had not made or distributed the sheathed cord. Indeed, plaintiffs themselves originally pleaded that ATS manufactured the cord, not GCSC. By their own admission, plaintiffs did not develop any evidence to contradict GCSC's assertions until after GCSC's motion was denied. Even if GCSC was not entitled to summary judgment, it cannot be said that its motion had no basis in law or fact.

■ Thus, the district court clearly abused its discretion in determining that GCSC's assertions were groundless. To impose sanctions under Rule 13, the district court was also required to find that GCSC's assertions were made in bad faith or for the purpose of harassment. Since plaintiffs do not contend, and the district court did not find, that GCSC's assertions were harassing, a finding of bad faith was a prerequisite to sanctions. Rule 13 prescribes that courts presume that papers are filed in good faith. Thus, the burden is on the party moving for sanctions to overcome this presumption. Plaintiffs failed to carry this burden. The only basis the district court gave for finding that GCSC had acted in bad faith was that GCSC had ignored or concealed evidence that it had been involved in making and distributing the sheathed cord that injured the plaintiffs. As we have seen, however, there is no proof that GCSC, before it moved for summary judgment, was aware of any evidence that it was involved in the manufacture or distribution of the sheathed cord.

■ Furthermore, a motion for summary judgment asserting that no genuine issue of material fact exists is not proved groundless or in bad faith merely by the filing of a response which raises an issue of fact, even if the response was or could have been anticipated by the movant. Nor is denial of a motion for summary judgment alone grounds for sanctions. Rule 13 does not permit sanctions for every pleading or motion that requests relief which is denied. In this case, the district court abused its discretion in finding that GCSC had acted in bad faith.

The district court also sanctioned GCSC for asserting in its motion for summary judgment that it did not know of any defects in the sheathed cord and could not have foreseen an accident like plaintiffs', when it was aware of the GTFL memo. Since we have determined that there is no evidence that GCSC was aware of the GTFL memo when it filed its motion for summary judgment, and plaintiffs have offered no other evidence of GCSC's knowledge of any defects in the cord, we conclude that such assertions were not groundless or made in bad faith.

■ Even if GCSC's assertions in its amended answers and motion for summary judgment had been sanctionable, they would not have warranted striking GCSC's pleadings. Rule 13 requires that sanctions imposed be "appropriate", which is the equivalent of "just" under Rule 215. *TransAmerican*, 811 S.W.2d at 916–17 n. 4. Neither standard allows imposition of excessive sanctions. Moreover, while the due process concerns under the two rules are not completely congruent, case determinative sanctions may not be imposed under either rule unless the violation warrants adjudication of the merits. Even if GCSC had violated Rule 13, there is nothing in the record to suggest that the violation could not have been fully redressed far short of striking GCSC's pleadings.

Thus, we hold that the district court clearly abused its discretion in imposing sanctions under Rule 13.

## IV

Finally, we consider whether GCSC has an adequate remedy by appeal. We have previously held that appeal from the imposition of case determinative, or "death penalty", sanctions is inadequate, unless the sanctions are imposed simultaneously with a final, appealable judgment. *Trans-American*, 811 S.W.2d at 920; *Chrysler*, 841 S.W.2d at 845 n. 2. For the same reasons expressed in those cases, GCSC has no adequate remedy by appeal in this case, and we exercise our discretion to issue the extraordinary writ.

We have held that an assessment of attorney fees which is not to be paid until final judgment is rendered may be adequately challenged by appeal. *Braden v. Downey*, 811 S.W.2d 922 (Tex.1991). Here, however, where we have concluded in considering case determinative sanctions that the district court clearly abused its discretion in awarding any sanctions at all, there remains no basis for the award of attorney fees.

Accordingly, we conclude that GCSC is entitled to have the district court's sanction order set aside.

\* \* \* \* \* \*

We therefore direct the district court to vacate its orders of November 14, 1991, and June 12, 1992, assessing sanctions and attorney fees. We assume the district court will promptly comply. The writ of mandamus will issue only if it does not.

DOGGETT and SPECTOR, JJ., not sitting.