George E. CIRE, Jr., Martha K. Adams
and Taylor & Cire, Petitioners,

v.

Carla Roberson CUMMINGS,
Respondent.

No. 02–0670.

Supreme Court of Texas.

Argued Oct. 1, 2003.

Decided April 23, 2004.

Rehearing Denied June 18, 2004.

Byron G. Lee, Carol Patricia Keough, Coats Rose Yale Ryman & Lee, P.C., Houston, Charles R. Watson Jr., Mullin Hoard & Brown, L.L.P., Amarillo, for petitioners.

L.T. "Butch" Bradt, Telschik Law Firm, Houston, for respondent.

Justice SCHNEIDER delivered the opinion of the Court.

The issue in this case is when, if ever, a trial court may strike a plaintiff's pleadings as a sanction without first testing the effectiveness of lesser sanctions. We conclude that in this case, the trial court did not abuse its discretion by striking the plaintiff's pleadings and imposing death penalty sanctions when the plaintiff violated the trial court's orders by deliberately destroying dispositive evidence sought by the defendant in discovery. Thus, we reverse the court of appeals' judgment and

accordingly, render a take-nothing judgment against Cummings.

## I

Attorneys George Cire and Martha Adams and the law firm of Taylor & Cire (collectively "Cire") represented Carla Cummings ("Cummings") in a suit against Texas Utilities Fuel Company ("TUFCO"). After the TUFCO litigation settled, Cummings filed a legal malpractice fee forfeiture suit against Cire, claiming that Cire told her the settlement would be "tax free" and that Cire did not explain how the settlement or the resulting attorney's fees would be structured and paid.

During pretrial discovery of the malpractice suit, Cummings testified that she had tape-recorded several conversations with Cire during the TUFCO litigation, including discussions of the settlement negotiations. Specifically, the record reflects that Cummings made between 70 to 100 secret audiotape recordings during the eight months preceding the settlement agreement, and she kept the audiotapes in her home office.

Cire requested production of the audiotapes in discovery and Cummings objected to the request. Cire then moved to compel production. Cummings did not file a response. Without an oral hearing, the trial court entered an order compelling production. The trial court found that Cummings filed evasive, incomplete answers and frivolous objections to discovery requests. The trial court also ordered that Cummings's counsel pay $250 in attorney's fees to Cire's counsel.

Cummings did not comply with the trial court's order. Instead, Cummings sought a writ of mandamus, which was denied by the court of appeals and this Court. The trial court again ordered Cummings to comply with the discovery requests, and after Cummings again refused to comply, the trial court granted Cire's second motion to compel. Again, Cummings refused to comply, so Cire filed a motion to strike Cummings's pleadings. It is not contested that Cummings had possession of the audiotapes. Nor is it an issue that Cummings had a duty to preserve the audiotapes once they were sought by Cire in discovery. See Wal–Mart Stores, Inc. v. Johnson, 106 S.W.3d 718, 722 (Tex.2003).

At the sanctions hearing, Cummings admitted that she had possession of the audiotapes she made recording conversations with her attorneys. There was testimony that the audiotapes contained recorded conversations regarding the TUFCO settlement and that Cummings planned to "use the audiotapes against" Cire to "help her case." Elizabeth Martinez, Cummings's friend and neighbor, testified that she had seen 70 to 100 audiotapes in Cummings's home office (approximately "two shoe boxes full") that Cummings had made of her conversations with Cire. Martinez also testified that she and several others heard portions of the audiotapes. The audiotapes were the only evidence that would support or disprove Cummings's claims of misrepresentation. The record does not reflect that there was any other evidence that would support either side's position.

Cummings testified at the hearing that she did not destroy the audiotapes and that she did not tell anyone to destroy the audiotapes. However, Cire presented evidence at the sanctions hearing that Cummings burned the audiotapes in the presence of Elizabeth Martinez, and that Cummings laughed with her friends about being a habitual liar. After listening to the evidence presented, the trial court determined that Cummings deliberately destroyed the audiotapes to avoid production, and, based on this determination, properly presumed that her actions prevented Cire from obtaining objective proof

that they were not liable. *See Trans-American Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex.1991) (noting that a party's hindrance of the discovery process may justify a presumption that its claims lack merit). Cummings's own statements that the audiotapes would help her case against Cire supports the trial court's findings that the audiotapes were material and relevant to the case. Cummings's deliberate destruction of the audiotapes further justifies the trial court's presumption that, contrary to Cummings's assertions, the tapes would not have helped her case. The trial court did not abuse its discretion in making these findings of fact based on the testimony presented. The trial court granted the motion to strike the pleadings as a sanction for Cummings's failure to comply with the discovery orders.

In its order, the trial court's primary focus was on Cummings's failure to produce the audiotapes. The trial court found that Cummings "flagrantly violated" four discovery orders by her failure to comply with them, tried to hide her relationship with other attorneys by refusing to answer deposition questions, used forged documents "to gain an advantage with the court," gave conflicting testimony under oath, and "deliberately destroyed and/or concealed material evidence" [the audiotapes] that would "show [Cummings's] claims had no merit."

The trial court found that less stringent sanctions would be "ineffective," reasoning that because Cummings's counsel never paid the $250 sanction for filing frivolous objections to discovery, monetary sanctions would not deter Cummings. In addition, the court found that less stringent sanctions could not cure Cummings's wrongdoing based on its presumption that Cummings's destruction of the audiotapes, after they had been repeatedly ordered produced, deprived Cire of objective factual evidence that went to the heart of the proof required to show that Cummings's claims lacked merit. The court of appeals reversed, holding that the trial court abused its discretion when it failed to consider alternative, lesser sanctions and when it did not explain why lesser sanctions would not suffice. 74 S.W.3d at 929. The court of appeals noted that the trial court had only issued sanctions once before striking Cummings's pleadings. Emphasizing that the fine imposed was against Cummings's attorney, the court of appeals concluded that the failure to pay the fine should not be used as evidence that a lesser sanction against Cummings would have been ineffective. The court of appeals also said that the trial court could have and should have considered other, lesser sanctions before it imposed death penalty sanctions. It suggested a less stringent sanction: a spoliation instruction to the jury directing it to assume the missing audiotapes would have been unfavorable to Cummings. Ultimately, the court of appeals concluded that the trial court violated *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729–30 (Tex.1993), when it refused to consider lesser sanctions.

We granted the petition to consider the issue of death penalty sanctions and to examine whether a trial court's sanctions order must recite why every conceivable sanction would be ineffective in securing compliance and curing prejudice before striking pleadings.

## II

▮ A trial court's ruling on a motion for sanctions is reviewed under an abuse of discretion standard. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985). The test

for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but "whether the court acted without reference to any guiding rules and principles." *Downer,* 701 S.W.2d at 241; *see also Bodnow Corp.,* 721 S.W.2d at 840. The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Downer,* 701 S.W.2d at 242.

Texas Rule of Civil Procedure 215.2 allows a trial court to sanction a party for failure to comply with a discovery order or request. Rule 215.2(b) lists the sanctions a court may impose. They include: (1) an order disallowing any further discovery of any kind; (2) an order charging all or a portion of the expenses of discovery against the disobedient party; (3) an order that the matters regarding which the order was made or any other designated facts shall be taken to be established; (4) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting designated evidence from being introduced into evidence; (5) an order striking out pleadings or parts thereof, staying the action until the order is obeyed, dismissing the action with or without prejudice, or rendering judgment by default; (6) a contempt order; and (7) an order requiring the disobedient party to pay reasonable expenses, including attorney fees, caused by the failure. TEX.R. CIV. P. 215.2(b).

■ Sanctions are used to assure compliance with discovery and deter those who might be tempted to abuse discovery in the absence of a deterrent. *Downer,* 701 S.W.2d at 242. However, a trial court may not impose a sanction that is more severe than necessary to satisfy its legitimate purpose. *Hamill v. Level,* 917 S.W.2d 15, 16 (Tex.1996). Here, the court of appeals relied on our previous holdings in *Trans-*

*American Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex.1991), and *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844 (Tex. 1992), in concluding that the trial court's sanctions were too severe.

In *TransAmerican,* the trial court struck TransAmerican's pleadings because TransAmerican's president failed to appear for a deposition. We held that Rule 215 requires that any sanctions imposed be "just," and explained that there are two components to measuring whether an imposition of sanctions is just. First, a direct relationship must exist between the offensive conduct and the sanction imposed. *TransAmerican,* 811 S.W.2d at 917. We noted that "[t]his means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party." *Id.* Second, the sanctions must not be excessive *Id.* In other words, "[t]he punishment should fit the crime ... courts must **consider** the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Id.* (emphasis added). We explained:

> Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. However, if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it ... Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules.

*Id.* at 918 (citations omitted). Ultimately, we concluded that the trial court's sanctions in *TransAmerican* were too severe

because there was nothing in the record to indicate that the trial court considered the imposition of lesser sanctions. We also noted that the record strongly suggested that lesser sanctions should have been utilized and that they might have been effective. *Id.* We gave several specific examples of lesser sanctions that the trial court could have considered or used before imposing the "death penalty" sanction:

> The district court could have ordered Shephard's deposition for a specific date and punished any failure to comply with that order by contempt or another sanction. He also could have taxed the costs of the deposition against TransAmerican and awarded Toma attorney fees.

*Id.*

In *Chrysler*, the second case the court of appeals relied on, the trial court struck Chrysler's pleadings when Chrysler refused to produce crash-test reports that were repeatedly requested by the plaintiffs. We noted that "lesser sanctions must first be *tested* to determine whether they are adequate" before a sanction that prevented a decision on the merits of a case could be justified. *Chrysler*, 841 S.W.2d at 849 (emphasis added). We conditionally granted mandamus relief and ordered the trial court to set aside the order, holding that the trial court had failed to meet the standards set out in *TransAmerican* in four ways. First, there was no direct relationship between the offensive conduct and the sanction imposed, as the plaintiffs did not show that they were unable to prepare for trial without the test reports, and the record did not demonstrate Chrysler's ability to produce the test reports. Second, striking Chrysler's pleadings and rendering a default judgment was more severe than necessary to satisfy the legitimate purposes of sanctions for discovery abuse. Third, no lesser sanction was first imposed. Finally, death

penalty sanctions should not be used to deny a trial on the merits unless the court finds that the sanctioned party's conduct "justifies a presumption that its claims or defenses lack merit" and that "it would be unjust to permit the party to present the substance of that position [which is the subject of the withheld discovery] before the court." *Id.* at 850.

Our decision in *Chrysler* was soon followed by *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725 (Tex. 1993). In *GTE*, we conditionally granted mandamus relief when a telephone cord manufacturer was improperly sanctioned for failing to produce a memorandum when there was no evidence that it had actual or constructive possession of the document. *GTE*, 856 S.W.2d at 727. We reaffirmed our *TransAmerican* holding in *GTE*, specifically noting that a trial court was required to **consider** the availability of lesser sanctions before imposing death penalty sanctions. Under this standard, the trial court need not test the effectiveness of each available lesser sanction by actually imposing the lesser sanction on the party before issuing the death penalty; rather, the trial court must analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed. *GTE*, 856 S.W.2d at 729 ("[T]he record must reflect the trial court considered the availability of lesser sanctions."); *see also Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 883 (Tex.2003) (noting that the record should "contain some explanation of the appropriateness of the sanctions imposed"); *TransAmerican*, 811 S.W.2d at 917. However, we did not overrule the language in *Chrysler* requiring that lesser sanctions first be **tested** to determine whether they are adequate before a death penalty sanction could be justified in our *GTE* opinion. Instead, we reemphasized that case-determinative sanctions may only be imposed in "exceptional cases" where

they are "clearly justified" and it is "fully apparent that no lesser sanctions would promote compliance with the rules." *GTE*, 856 S.W.2d at 729–30. This holding was reaffirmed in *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex.2003) (requiring a trial court to *"consider* less stringent measures before settling on severe sanctions," but reiterating that death penalty sanctions may only be imposed in the first instance when the facts of the case are exceptional and such a sanction is "clearly justified").

## III

In light of the *GTE* holding, we must first decide whether the facts of this case make it one of the "exceptional" cases warranting death penalty sanctions. Second, we must determine whether the trial court's discussion of lesser sanctions in its order complies with our earlier holdings in *TransAmerican*, *Chrysler*, and *GTE* that the trial court consider the availability of less stringent sanctions, and in all but the most exceptional cases, actually test the lesser sanctions before striking the pleadings.

## A

■ Here, the trial court not only found that Cummings refused to produce the audiotapes, but also found that Cummings deliberately destroyed the audiotapes after being thrice ordered to produce them. Based on the destruction of evidence, the trial court then presumed that the audiotapes "go to the heart of the proof needed by Defendants to show Plaintiff's claims are without merit." The trial court explained that the destruction of the audiotapes "take[s] away from these Defendants the ability to show by recorded conversations and/or documents objective proof that these Defendants are not liable." . Because the audiotapes sought by

Cire would have either proved or disproved Cummings's claims, her destruction of them justifies a presumption they would have done the latter. On this record, it was within the trial court's discretion to determine that Cummings deliberately destroyed dispositive evidence; thus, death penalty sanctions are warranted in this exceptional case. As we explained in *TransAmerican*, discovery sanctions can be used to adjudicate the merits of a party's claims when a party's hindrance of the discovery process justifies a presumption that its claims lack merit. *TransAmerican*, 811 S.W.2d at 918. Here, without the destroyed audiotapes, Cummings's claims lack merit.

■ The trial court explained:

The court finds less stringent sanctions are not required here because less stringent sanctions would be ineffective. Plaintiff recorded conversations with the Defendants when they discussed with Plaintiff critical factual statements that Plaintiff alleges .support her claims against these Defendants. Plaintiff's conduct of concealing and/or destroying the audio tapes had deprived Defendants of that objective factual audio evidence.

Plaintiff testified at the evidentiary hearing that she has no money to pay monetary sanctions. Plaintiff's actions and statements make it clear that monetary sanctions are not effective to deter Plaintiff's conduct. Plaintiff and her counsel have failed and refused to pay a $250.00 sanction for filing frivolous objections to discovery. Monetary sanctions cannot cure Plaintiff's wrongdoing, such as destroying and concealing the material evidence found on the audio tapes. The continued failure of Plaintiff or Plaintiff's counsel to pay the small monetary sanction, ordered by the court,

indicates blatant disregard of the court's order.

The discussion in the trial court's order goes beyond simply stating that lesser sanctions would not be effective; the order contains an extensive, reasoned explanation of the appropriateness of the sanction imposed, demonstrating that the trial court considered the availability of less stringent sanctions as we have required. *See Spohn*, 104 S.W.3d at 883; *GTE*, 856 S.W.2d at 729. Ordinarily, a trial court would also be required to test the effectiveness of lesser sanctions by actually implementing and ordering each sanction that would be appropriate to promote compliance with the trial court's orders in the case. *See Chrysler*, 841 S.W.2d at 849. However, because of the egregious conduct and blatant disregard for the discovery process demonstrated here, including the violation of three court orders ordering production of the audiotapes, we conclude that death penalty sanctions are clearly justified. This is an exceptional case where it is fully apparent and documented that no lesser sanctions would promote compliance with the discovery rules, and the trial court did not abuse its discretion in striking Cummings's pleadings.

B

The court of appeals found the trial court's order was insufficient under our prior precedent, and would require the trial court to address each of the lesser sanctions available and explain why they would not be effective. The court of appeals also held that the trial court's presumption that a monetary sanction would be ineffective was insupportable because the trial court had imposed monetary sanctions only once, and that sanction was not assessed against Cummings but was instead assessed against her attorney. We disagree with both of these holdings.

In *GTE*, we required the record to "reflect that the court considered the availability of lesser sanctions." *GTE*, 856 S.W.2d at 730. Nothing in the standard articulated in *GTE* requires that a trial court test the effectiveness of lesser sanctions by actually implementing and ordering each and every sanction that could possibly be imposed before striking the pleadings of a disobedient party. Nor does *GTE* require a trial court to list each possible lesser sanction in its order and then explain why each would be ineffective. *GTE* requires that the record reflect that the court "consider" the availability of appropriate lesser sanctions, and cautions that in all but the most exceptional cases, the trial court must actually test the lesser sanctions before striking the pleadings. *GTE*, 856 S.W.2d at 730. Again, we reemphasize that striking pleadings is a harsh sanction that must be used as a last resort after the trial court has considered lesser sanctions, and that in all but the most egregious and exceptional cases, the trial court must test lesser sanctions before resorting to death penalty sanctions. However, in cases of exceptional misconduct such as this one, the trial court is not required to test lesser sanctions before striking pleadings under our previous holdings in *TransAmerican, Chrysler,* and *GTE,* so long as the record reflects that the trial court considered lesser sanctions before striking pleadings and the party's conduct justifies the presumption that its claims lack merit. This means that a trial court must analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed. The trial court's order in this case meets this test.

The imposition of death penalty sanctions in this case was just and not excessive. *See Spohn Hosp.,* 104 S.W.3d at 882 (citing *TransAmerican,* 811 S.W.2d at 917). The sanction was directed against

Cummings, the offender, and remedied the prejudice caused to Cire when the trial court presumed evidence going to "the heart of the proof needed" to defend Cummings's claims was destroyed. In a case of such egregious conduct, death penalty sanctions will secure compliance with discovery rules, deter other litigants from destruction of dispositive evidence, and punish Cummings.

The court of appeals stresses that the trial court did not discuss one of the most obvious "lesser sanctions" used in spoliation cases: the trial court's ability to instruct the jury that they should presume that the missing audiotapes would have been unfavorable to Cummings. TEX.R. CIV. P. 215(b)(3); *see Trevino v. Ortega,* 969 S.W.2d 950, 952 (Tex.1998) (defining spoliation as an evidentiary concept that allows "the factfinder to deduce[ ] guilt from the destruction of presumably incriminating evidence"). However, the sanctions hearing record reflects that the trial court considered using a spoliation instruction as a sanction even though it ultimately chose not to do so. The attorneys discussed the *Trevino* case and the potential use of a spoliation instruction at length with the trial court.

A spoliation instruction may be given when a party has deliberately destroyed relevant evidence. *See Wal–Mart Stores, Inc.,* 106 S.W.3d at 721. In this case, although the trial court could have instructed a jury that Cummings deliberately destroyed the audiotapes after they were ordered to be produced in discovery because they would have been unfavorable to her claims, Cire would still have to prepare for and attend a trial, despite a justified presumption that Cummings's claims were meritless. Thus, the trial court did not abuse its discretion by choos-

ing instead to strike Cummings's pleadings. Sanctions are used to punish those who violate the discovery rules, and this is an exceptional case where the only objective evidence that would have supported or disproved Cummings's claims was deliberately destroyed after the trial court thrice ordered it produced. Such intentionally egregious behavior warrants a harsher sanction.

Given the extent and severity of the discovery abuses committed by Cummings, this is an "exceptional" case as contemplated in *GTE* where death penalty sanctions are justified. *See GTE,* 856 S.W.2d at 729. In this case, the trial court did not abuse its discretion by striking the pleadings to promote compliance with its orders.

### IV

■ In her cross-petition, Cummings urges that the trial court was required to hold an "oral hearing" as a matter of due process before ruling on the motion to compel and ordering $250 to be paid to Cire's attorneys as a sanction. We disagree. A motion to compel may be ruled upon by a trial court after "reasonable notice to other parties and all other persons affected." TEX.R. CIV. P. 215.1. As the court of appeals correctly explained, whether to hold an oral hearing on a motion to compel is a matter within the discretion of the trial court. Although either party may request an oral hearing, *see McKinney v. Nat'l Union Fire Ins. Co.,* 772 S.W.2d 72, 74–75 (Tex.1989), Cummings did not do so, and there is no "oral hearing" requirement in the rules.[1] Rule 215.3, which authorizes a trial court to impose sanctions, does require "notice and hearing" before sanctions are imposed. TEX.R. CIV. P. 215.3. However,

---

1. However, if a motion to compel is granted, after an "opportunity for a hearing," the trial court may order costs and/or expenses. *See* TEX.R. CIV. P. 215.1(d).

nothing in the rule indicates that this must be an "oral hearing." A "hearing" does not necessarily contemplate a personal appearance before the court or an oral presentation to the court. *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex.1998) (oral hearing not required on motion for summary judgment); *see also Gulf Coast Inv. Corp. v. Nasa 1 Bus. Ctr.*, 754 S.W.2d 152, 153 (Tex.1988) ("[N]ot every hearing called for under every rule of civil procedure, however, necessarily requires an oral hearing."). Thus, the trial court did not abuse its discretion in ordering a $250 sanction for filing frivolous objections to discovery without an oral hearing. A trial court can take judicial notice of the usual and customary fees awarded as a discovery sanction. TEX. CIV. PRAC. & REM.CODE § 38.004. Cummings had at least ten days' notice of the submission date of the motion to compel, and the motion was properly served on Cummings's attorney.

■ Cummings also complains that the trial court erred by overruling her objections to discovery requests and by compelling her answers to deposition questions and interrogatories. The court of appeals concluded that Cummings had not preserved these issues for review because they were not adequately briefed. 74 S.W.3d at 924. On appeal to this court, Cummings urges that because the appellate briefing rules are to be liberally construed, she preserved error. Construing the requirements for appellate briefs liberally, we conclude that Cummings preserved error at the court of appeals on these issues. *See* TEX.R.APP. P. 38.9; *Weaver v. Southwest Nat'l Bank*, 813 S.W.2d 481, 482 (Tex.1991). However, we hold that the trial court did not abuse its discretion in overruling Cummings's objections to discovery requests and by compelling her answers to deposition questions

and interrogatories. Although Cummings objected to the discovery requests, she did not file a response to the motion to compel. The failure to file a response may be considered a representation of no opposition under the local rules of the Harris County district courts, and the filing of a motion for rehearing long after the discovery orders have been entered does not salvage Cummings's argument. *See* HARRIS CTY. DIST. CIV. RULE 3.3.3. Moreover, the discovery sought by Cire was relevant and was not overbroad or unduly burdensome; thus, the cases cited in support of Cummings's objections are distinguishable. As the court of appeals noted, "doing nothing in the face of a pending motion and then complaining on appeal runs afoul of the policy underlying Appellate Rule 33.1." 74 S.W.3d at 924, n. 1.

■ Finally, Cummings complains that the trial court's order is "fatally defective" for three reasons. First, Cummings notes that it recites that "Reliance Insurance Company's" Motion to Compel was heard, even though Reliance Insurance Company was not a party to the suit. However, Cummings offers no persuasive legal support for the proposition that a trial court's minor clerical error voids an otherwise valid discovery order. Second, Cummings complains that the trial court ordered "Plaintiff" to comply with the discovery order without specifying that Carla Cummings was the plaintiff required to comply. However, Cummings could not have been confused as to who the court's order was directed to. The only other plaintiff in the case, Carl Hendrickson, was deceased at the time of the order. Lastly, Cummings complains that the trial court refers to its prior order and a previously served subpoena duces tecum without attaching copies of these documents to the trial court order. Again, Cummings offers no authority for the proposition that the trial court

must attach the prior order that was violated to its order on a motion for sanctions, and there is no such requirement in Rule 215.3 of the Texas Rules of Civil Procedure. The record does not reflect that Cummings made any attempt to seek clarification of the trial court's order for any of these three reasons. We therefore overrule Cummings's complaint that the trial court's order is "fatally defective."

## V

We reverse the court of appeals' decision to set aside the death penalty sanctions imposed by the trial court, and we render judgment that Cummings take nothing against Cire.