# Supreme Court of Texas

No. 24-0255

In re Newkirk Logistics, Inc.,

*Relator*

On Petition for Writ of Mandamus

**PER CURIAM**

Trial courts may impose "just" sanctions on litigants who do not meet their discovery obligations. TEX. R. CIV. P. 215.2(b); *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). But the discretion to do so is not limitless. "Two factors mark the bounds of the trial court's discretion in order for sanctions to be just: first, a direct relationship between the offensive conduct and the sanction imposed must exist; and second, the sanction imposed must not be excessive." *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). Distilled down to its basic principle: "The punishment should fit the crime." *TransAmerican*, 811 S.W.2d at 917. We have therefore held that death-penalty sanctions, which cause the offending party to essentially lose the case, are reserved for the most exceptional cases and should be the trial court's "last resort." *Cire v. Cummings*, 134 S.W.3d 835, 840-42 (Tex. 2004).

Death-penalty sanctions were not a last resort in this case. The trial court struck Newkirk's pleadings without first considering or testing lesser sanctions, and the court of appeals denied Newkirk mandamus relief without issuing a substantive opinion. Because Newkirk's pleadings were struck, Plaintiffs received the equivalent of a default judgment not only on their negligence claims but also on their gross-negligence claim. Even if Newkirk violated a discovery order—which is far from clear—we conclude its conduct did not justify the extreme punishment imposed. As a result, we conditionally grant Newkirk's petition for writ of mandamus.

## I. Background

This mandamus proceeding arises from a car wreck. Rayah Lemons and Nicholas Begaye suffered serious injuries after their vehicle was struck by a tractor-trailer operated by Mario Cottman, an employee of Newkirk Logistics, Inc. Cottman was backhauling cargo from Oklahoma to a warehouse in Texas under an agreement between Newkirk and Global Mail Inc., d/b/a DHL eCommerce. Lemons and Begaye sued Cottman and Newkirk, asserting causes of action for ordinary and gross negligence against Cottman and for negligent entrustment; negligent hiring, retention and training; and gross negligence against Newkirk. Plaintiffs later added DHL eCommerce and Hogan Truck Leasing, Inc., the owner of the tractor, as defendants.

A discovery dispute arose regarding the existence and possession of contracts between Newkirk and DHL eCommerce. Newkirk and DHL eCommerce have done business together for over a decade and, according to Newkirk, have done so through an online bidding process.

2

Under that process, Newkirk first submits a bid, and then DHL eCommerce either awards or denies Newkirk the job. Newkirk maintained throughout discovery that its day-to-day business relationship with DHL eCommerce was not governed by written contracts.

Plaintiffs requested the production of all contracts between Newkirk and DHL eCommerce. Newkirk responded that it located no responsive documents after a diligent search. The trial court then issued a discovery order compelling Newkirk to produce any contracts between it and DHL eCommerce, bills of lading, other shipping documents, tractor-trailer maintenance records, leases, emails, and dispatch reports. The discovery order contemplated limited sanctions due to the insufficient deposition of Newkirk's corporate representative (a matter not at issue here) and directed Plaintiffs to submit a proposed monetary sanctions order. Plaintiffs never submitted a proposed monetary sanctions order, and the trial court never signed one.

After another fruitless search in compliance with the discovery order, Newkirk did not produce contracts between it and DHL eCommerce. Plaintiffs filed a motion for sanctions in response. In the hearing on that motion, Newkirk's counsel reiterated that, despite Newkirk's best efforts, no written contracts with DHL eCommerce were found. The trial court concluded that no sanctions were warranted.

Things changed in June 2023. In response to requests for production, DHL eCommerce produced two documents: the 2015 "DHL eCommerce Transportation Requirements" and the 2014 "Cartage Agreement." The documents were signed by both DHL eCommerce and

3

Newkirk and appeared to govern aspects of the companies' business relationship. Under the impression that DHL eCommerce's production of the contracts necessarily meant that Newkirk possessed but failed to produce the same, Plaintiffs filed a second motion for sanctions against Newkirk. Newkirk responded that Plaintiffs lacked any evidence it intentionally engaged in deceptive discovery conduct and attached affidavits from its president and an employee stating that, at the time of their depositions, they believed no written agreements existed between DHL eCommerce and Newkirk.

The trial court heard the second sanctions motion in July 2023. It was a brief hearing. After a few minutes of argument, the court orally struck Newkirk's pleadings because it failed to produce the DHL documents. Five months later, the trial court signed a seventeen-page sanctions order adopting findings of fact and conclusions of law submitted by Plaintiffs' counsel. The findings of fact and conclusions of law added justifications for the death-penalty sanctions—none of which were discussed in the July 2023 sanctions hearing. Without issuing a substantive opinion, the court of appeals denied Newkirk's mandamus petitions challenging the oral and written sanctions orders. Newkirk now seeks mandamus relief from this Court.

## II. Discussion

We review a trial court's imposition of sanctions for abuse of discretion. *Cire*, 134 S.W.3d at 838. A trial court abuses its discretion when it acts without reference to any guiding rules and principles such that its ruling was "arbitrary or unreasonable." *Id.* at 839.

4

The trial court's justifications for striking Newkirk's pleadings fit into three main categories:

1. <u>failing to produce the DHL documents</u>: Newkirk failed to produce the contractual documents that were later produced by DHL eCommerce;

2. <u>failing to produce other documents</u>: Newkirk failed to produce or properly retain bills of lading and other shipping documents, tractor-trailer maintenance records and leases, Cottman's pay stubs and employment history, and GPS data; and

3. <u>misidentifying DHL eCommerce</u>: Newkirk misidentified DHL eCommerce in earlier discovery responses.

The DHL documents were the original and only basis on which the trial court orally struck Newkirk's pleadings. The other justifications did not come until later, when the trial court signed findings of fact and conclusions of law that, as is standard practice, were drafted by Plaintiffs' counsel.

Plaintiffs now argue that we are bound by the trial court's findings and conclusions. It's easy to see why. The findings and conclusions greatly expand the grounds for sanctions and attached over 1,000 pages of documents consisting mostly of hearing transcripts and argumentative filings. But Plaintiffs' complete reliance on these findings and conclusions ignores our precedent. We independently review the entire record to determine whether the trial court abused its discretion when imposing sanctions on a party. *E.g.*, *Am. Flood Rsch., Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006).

As the party seeking sanctions, Plaintiffs had the burden of establishing their right to relief. *See GTE Commc'ns Sys. Corp. v.*

5

*Tanner*, 856 S.W.2d 725, 729 (Tex. 1993). Where, as here, "a motion for sanctions asserts that a respondent to a discovery request has failed to produce a document within its possession, custody or control, the movant has the burden to prove the assertion." *Id.* We therefore look for evidence of actual or constructive possession, custody, or control of the sought-after documents. If a party failed to produce documents over which it had actual or constructive possession, custody, or control, the court must determine whether the "party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit" before depriving the party of its right to present the merits of its case. *TransAmerican*, 811 S.W.2d at 918. Such a severe outcome requires evidence not just of "bad faith," but of "flagrant" or "extreme" bad faith. *Altesse Healthcare Sols., Inc. v. Wilson*, 540 S.W.3d 570, 575-76 (Tex. 2018).

We start with the DHL documents. Plaintiffs argue, and the trial court found, that Newkirk had actual or constructive possession of the DHL documents and that it intentionally concealed and failed to produce them. While the DHL documents were signed by Newkirk—thus serving as some evidence of actual possession, at least at some point—there is insufficient evidence that Newkirk intentionally concealed or intentionally failed to produce the documents when they were requested. Rather, the record suggests that Newkirk used its best efforts to search for the DHL documents in accordance with the trial court's discovery orders. Newkirk's president and an employee testified that they were unaware of the eight-year-old documents and believed no written agreements existed between Newkirk and DHL eCommerce.

6

Plaintiffs' "mere skepticism or bare allegations that [Newkirk] has failed to comply with its discovery duties" in flagrant or extreme bad faith will not do. *See In re Weekley Homes, L.P.*, 295 S.W.3d 309, 318 (Tex. 2009).

So too for the other documents that the trial court sanctioned Newkirk for failing to produce. The trial court found that Newkirk failed to produce or properly retain bills of lading and other shipping documents, tractor-trailer maintenance records and leases, Cottman's pay history, Cottman's post-accident drug test, and Cottman's GPS data. According to Plaintiffs, Newkirk made a "calculated and egregious" decision to withhold those documents. Newkirk responds that Plaintiffs produced no evidence of Newkirk's actual or constructive possession of the documents and produced no evidence that Newkirk intentionally concealed and failed to produce them. We take each category of documents in turn.

The record provides no evidence that Newkirk intentionally withheld bills of lading or other shipping documents that were in its actual possession. Rather, Newkirk produced the responsive documents it possessed, including a copy of the electronic record of Cottman's pick-ups and drop-offs on the accident date. As for constructive possession, no evidence suggests that Newkirk had the legal right to compel production of additional documents from any third party. We cannot infer intentional concealment or deliberate destruction of any additional bills of lading and shipping documents based on Plaintiffs' mere speculation. Speculation cannot substitute for evidence of bad faith.

7

For the tractor-trailer maintenance records and leases, the record establishes that a different defendant, Hogan, owned the tractor and leased the trailer involved in the accident. No evidence demonstrates that Newkirk had actual possession of maintenance records beyond those it already produced. Plaintiffs point to Hogan's eventual production of maintenance records as proof of Newkirk's discovery violation, but this evidence suggests the opposite—that the records were maintained by and within the possession of Hogan, not Newkirk. As for constructive possession, Plaintiffs failed to establish any legal right by which Newkirk could compel Hogan to produce these records. No evidence demonstrates a parent–subsidiary relationship, joint business enterprise, or other legal relationship giving Newkirk control over Hogan's internal maintenance records. Mere business dealings between separate corporate entities do not establish constructive possession over each other's documents. *See GTE*, 856 S.W.2d at 729.

The record is also devoid of any evidence that Newkirk intentionally concealed or withheld relevant maintenance records or lease documents. Newkirk produced responsive documents within its possession and properly identified Hogan as the entity possessing more records. That these records were ultimately obtained directly from Hogan undermines the assertion that Newkirk engaged in obstructive conduct.

Concerning Cottman's pay history, post-accident drug test records, and GPS data, the record again fails to establish that, at the time this information was requested, Newkirk had actual or constructive possession of additional information not already produced.

8

Plaintiffs' contentions that Newkirk intentionally concealed and failed to produce additional information rest on speculation rather than evidence. Further, the trial court's June 16, 2023 discovery order did not compel Newkirk to produce Cottman's pay history, post-accident drug test, or GPS data. Thus, Newkirk's alleged failure to produce additional information within these categories did not violate a court order.

Across the categories of documents that the trial court sanctioned Newkirk for failing to produce, the record lacks evidence of the type of flagrant bad faith or callous disregard for discovery obligations that would justify imposing death-penalty sanctions. Even if we were to assume Newkirk was negligent in failing to retain certain documents, death-penalty sanctions would not be warranted. *See Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 489-90 (Tex. 2014) (holding trial court's sanctions were an abuse of discretion because no proof existed that the defendant intentionally concealed evidence).

The trial court also struck Newkirk's pleadings because it misidentified DHL eCommerce in its initial discovery responses. While Newkirk initially misidentified DHL eCommerce, the mistake was timely fixed. As a result, Plaintiffs were able to join the proper DHL entity—DHL eCommerce—well before any statute-of-limitations issue arose. It's hard to see how Plaintiffs suffered any prejudice from the mistake. The trial court ironically agreed, remarking at a prior hearing that Plaintiffs "haven't really shown me that somebody intentionally misled you or, you know, told you a wrong entity or something like that . . . . [C]orporate entities are always problematic. So long as the

correct entity is in there now, I don't think sanctions are appropriate for that." The trial court's about-face in the sanctions order can only be described as arbitrary.

Having concluded that no evidence shows Newkirk intentionally concealed and withheld documents, we turn to whether the trial court abused its discretion by imposing death-penalty sanctions against Newkirk. We conclude that it did.

For sanctions to be "just," there must be "a direct relationship . . . between the offensive conduct and the sanction imposed," and the "sanctions must not be excessive." *TransAmerican*, 811 S.W.2d at 917. Neither of these things is true here. First, there is no direct relationship between the offensive conduct and the sanction imposed. As we have maintained since *TransAmerican*, the "sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party." *Id.* While a failure to produce documents can certainly prejudice a party's efforts to prove its claim, Plaintiffs have not shown that they have been unable to prepare for trial because of Newkirk's purported failures. Nor is there evidence that Newkirk failed to comply with its discovery duties in flagrant or extreme bad faith. A party's pleadings should not be struck under such circumstances. *See GTE*, 856 S.W.2d at 729-30.

Second, the sanctions were excessive. Sanctions cannot be used to effectively adjudicate the merits of a case unless the offending party's conduct justifies a presumption that its claims or defenses lack merit. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 184 (Tex. 2012). Here, Newkirk's conduct does not support such a presumption.

10

This is not a case like *Cire*, where we affirmed death-penalty sanctions because the offending party *deliberately* destroyed evidence after being ordered to produce it. 134 S.W.3d at 841-42. The extraordinary justification required for death-penalty sanctions is simply absent here.

The trial court also had an obligation "to consider the availability of lesser sanctions." *Id.* at 840 (emphasis omitted). Death-penalty sanctions may be imposed in the first instance only under exceptional circumstances when such a sanction is "clearly justified." *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003). The trial court's order recites that less stringent sanctions would be ineffective, but its statements fail to adequately explain "the appropriateness of the sanctions imposed." *Id.* at 883. On this record, the conclusory statement that lesser sanctions would be inadequate cannot support the "most devastating" sanctions available, *TransAmerican*, 811 S.W.2d at 917-18, when it is not "fully apparent that no lesser sanctions would promote compliance with the rules," *GTE*, 856 S.W.2d at 729. "We fail to see why any number of lesser sanctions, from fines to contempt, would not have promoted compliance with discovery, if there had been abuse here." *Id.* at 729-30.

In sum, the record lacks evidence of the flagrant bad faith required for such severe sanctions; the punishment far exceeds any demonstrated prejudice to Plaintiffs; and the trial court failed to consider or test lesser sanctions first. For these reasons, the trial court abused its discretion in imposing death-penalty sanctions against Newkirk. Mandamus relief is appropriate where "a trial court imposes sanctions which have the effect of adjudicating a dispute," such as

11

"striking pleadings." *TransAmerican*, 811 S.W.2d at 919; *see also Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992) ("[A]n appeal will not be an adequate remedy where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's . . . error.").

### III. Conclusion

Accordingly, without hearing oral argument, *see* TEX. R. APP. P. 52.8(c), we conditionally grant Newkirk's petition for writ of mandamus. We direct the trial court to vacate its order striking Newkirk's pleadings and conduct further proceedings consistent with this opinion. We are confident the court will comply. The writ will issue only if it does not.

**OPINION DELIVERED:** May 16, 2025