

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-412-CV

ESTATE OF ALBERTA REESE CONNALLY,
DECEASED

------------

FROM PROBATE COURT NO.1 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Murphy Ward a/k/a Mervin Leon Reese,[2] a beneficiary under both the will and a trust signed by decedent Alberta Reese Connally (Alberta), appeals from two orders entered by the probate court denying his motion for declaratory judgment and denying his motion for summary judgment. In seven issues, Appellant argues that the appointed judge abused his discretion by

---

[1] ⬆ *See* Tex. R. App. P. 47.4.

[2] ⬆ Appellant is currently incarcerated and is proceeding pro se on appeal, just as he did in the probate court.

denying Appellant's motion to recuse Judge King and that the probate court abused its discretion by declaring that trust at issue had not been funded, by denying his motion for constructive trust, by overruling his objections to the amended inventory, and by denying his motion for sanctions. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Will and the Unfunded Trust

In her will, Alberta appointed Willie B. Scott Jones as independent executrix and bequeathed to her all of Alberta's personal property, as well as the residuary. The will bequeathed Alberta's home and all related policies or proceeds of insurance to Lura W. Reese, Appellant, and Nersis Reese Ferguson, per capita.

Alberta thereafter signed a "Revocable One-Party Living Trust," naming Willie B. Jones as trustee. The trust instructed the trustee to sell Alberta's home and the adjoining lot and to distribute the proceeds one-half to Appellant and one-half to Marie Connally and the trustee. The trust also instructed the trustee to sell a 2001 Honda owned by Alberta, to place the proceeds into an account named for Appellant, along with his part from the sale of the house and lot, and to distribute a monthly check to him in the amount of $100. Additionally, the trust document instructed the trustee to sell Longview property owned by Alberta and to give one-third of the proceeds to Marie

2

Connally, one-third to the trustee, and one-third to the account for Appellant to be distributed monthly. The trust also named Appellant as the beneficiary of all of the royalty rights owned by Alberta. Thus, Appellant stood to gain more under the trust than under the will.

After Alberta's death, Jones applied for probate of the will and for the issuance of letters testamentary. Jones also filed an application to determine the effect of the revocable trust, arguing that it had never been funded.

Based on her belief that the trust had never been funded, Jones gave Appellant a document entitled "Consent To Probate Of The Will Of Alberta Reese Connally And Waiver Of Any Claim Under A Revocable Trust," which he signed. The document states that Appellant is a beneficiary under both the will and the trust, that the trust was never funded, that he joins in the petition for probate of Alberta's will, and that he disclaims any and all interest in the trust. Beneficiary Marie Connally signed a similar document, disclaiming her interest in the trust.

Thereafter, the probate court signed an order admitting the will to probate. Jones subsequently filed an inventory, appraisement, and list of claims, which the probate court approved.

### B. Appellant's Request for Declaratory Judgment and Complaints Regarding the Inventory

Approximately fourteen months after the probate court approved the inventory Appellant filed a request for a declaratory judgment, requesting that the probate court make eight declarations regarding the trust. Appellant also filed a "Complaint For Additional Inventory," complaining that the inventory filed by Jones failed to include the name listed on a Bank One account, the name of the company issuing the oil royalty checks, and information about the listed property in California.

The probate court held a telephonic hearing on Appellant's complaint for additional inventory.[3] Approximately a month later, on March 22, 2007, the probate court sent a letter to the parties stating that "[a]s I indicate[d] during our telephonic hearing, I am granting the complaint for additional inventory, but I am declining to find the trust was ever funded." The probate court instructed Jones that the inventory should reflect more specific information on the bank accounts and royalty interests and that the reference to the California property should be deleted because the probate court did not have jurisdiction over

---

[3] The appellate record does not contain a copy of the transcript from this hearing, and it is unknown whether the hearing was recorded.

4

property located outside Texas. Jones thereafter complied with the probate court's instructions and filed an amended inventory.

### C. Recusal Refused

Before the probate court could sign a written order memorializing his rulings concerning the telephonic conference, Appellant filed a motion to recuse Judge King. Judge Joe Loving was assigned to hear Appellant's motion to recuse and denied it.

### D. Dueling Motions

Appellant thereafter filed a motion to impose a constructive trust, arguing that the probate court should impose a constructive trust over "all the property listed and unlisted within the inventory because fraud was committed against the Trust Estate and its beneficiaries." Specifically, Appellant contended that the trust had been funded and that the trustee and her attorney fraudulently obtained the waiver of Appellant's interest in the trust.

In response, Jones filed a motion for summary judgment and objection to Appellant's motion for constructive trust. Jones argued that Appellant's motion for constructive trust was without merit and that the relief he sought was barred by the doctrine of res judicata because the probate court had already ruled that the trust was never funded. Jones also asked that the probate court

5

consider appointing an attorney ad litem to represent Appellant because he continued to file allegedly meritless motions.

Appellant filed a response to Jones's res judicata motion for summary judgment, arguing that Jones could not show that the trial court had ruled on the issue of whether the trust had been funded. Appellant also claimed that he was entitled to summary judgment as a matter of law on his motion to impose a constructive trust because the executrix committed had fraud against the trust estate.

Jones thereafter filed a motion for sanctions. In the sanctions motion, Jones again urged the probate court to appoint an attorney ad litem for Appellant because of the allegedly meritless pro se motions Appellant had filed. Appellant responded to the sanctions motion and filed a cross-motion for sanctions.

### E. Rulings on the Dueling Motions

On October 9, 2007, the probate court held a telephonic hearing on the motions it had before it, including both parties' motions for summary judgment, Appellant's motion for constructive trust, and both parties' motions for sanctions. At the outset of the hearing, the probate court announced that it was not going to grant either party's motion for sanctions. Appellant argued in support of his motion for summary judgment that he was misled by Jones

6

and her attorney into waiving his rights under the trust. Appellant admitted that he was not initially aware that both the will and the trust had been filed with the probate court but that he had received a copy of both documents. Appellant also stated that he was not aware that the probate court had ruled against him on the trust and that he had not received a final judgment.

The probate court stated on the record,

> [Appellant] in the March 22nd communication from the Court to you, as well to [Jones's counsel], there was a rendition of judgment. A formal judgment has not been signed because of your motion to recuse the Court. Until that was resolved, I was unable to act on anything pending before the Court.
>
> Based on review of the pleadings and the evidence submitted, I'm going to decline to grant your motion for summary judgment on the basis that the Court has previously ruled and rendered judgment following the March – I believe it was the hearing on the declaratory judgment where you indicated that the trust had not been funded and therefore was not in existence or active and that the will was the dispositive document for [Alberta's] estate.

Appellant asked the probate court to rule that the waiver was invalid or void. The probate court, however, denied his request, stating that such relief had not been prayed for and that the matter had already been determined at the last telephonic hearing. The probate court explained to Appellant that "res judicata says that everything that was ruled upon or that could have been ruled upon is now foreclosed."

7

The next day, on October 10, 2007, the probate court signed two orders. One order denied Appellant's motion for summary judgment, denied the motions for sanctions filed by both parties, and denied the motion for the appointment of an ad litem for Appellant. The second order denied Appellant's motion for declaratory judgment, stating "that the *inter vivos* trust of the Decedent herein dated December 23, 2004, was never funded"; ordered that the inventory should be amended; and stated that "[a]ll other relief sought by either party herein and not granted hereby is expressly denied."[4] Appellant appeals the two orders signed on October 10, 2007.

---

[4] The record includes a letter dated October 10, 2007, from the probate court to the parties, which stated in pertinent part:

> As I indicated during our telephonic hearing, I am denying the Motion for Summary Judgment filed by [Appellant], principally on the ground that the issues raised have previously been ruled upon and are therefore res judicata.
> Following the telephonic hearing of February 13, 2007, the court made a rendition of judgment which it forwarded to all parties by mail. By the time [Jones's counsel] forwarded an order to me for signature, a motion to recuse had been filed by [Appellant] and, consequently, the court could not act until the motion to recuse had been resolved.
> Further, I am denying the motions of both parties for sanctions.
> The Motion for Appointment of an Ad Litem is not well taken and has no basis in law. Therefore, it will also be denied.
> Enclosed with this letter are copies of orders on: 1) the February 13, 2007 hearing and 2) yesterday's hearing.

### III. MOTION TO RECUSE

In his sixth issue, Appellant contends that the appointed judge, Judge Joe Loving, should have granted Appellant's motion to recuse the judge of the probate court, Judge King. Specifically, Appellant argues that he was mistreated by the court clerk, whom Judge King should have required to be courteous to litigants under Code of Judicial Conduct Canon 3B(4), and that Judge King refused to make determinations regarding alleged wrongdoing by Jones's counsel. *See* Tex. Code Jud. Conduct, Canon 3B(4), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. B (Vernon 1997). Jones responds that Appellant offered no evidence during the telephonic hearing to question the integrity of Judge King or to indicate that he was biased.

The denial of a motion to recuse is reviewed under an abuse of discretion standard on appeal. *See* Tex. R. Civ. P. 18a(f). The Texas Supreme Court has stated,

> '[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion,' and opinions the judge forms during a trial do not necessitate recusal 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240–41 (Tex. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994)).

9

Furthermore, expressions of impatience, dissatisfaction, annoyance, and even anger do not establish bias or partiality. *Id.* at 240. "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* (quoting *Liteky*, 510 U.S. at 556, 114 S. Ct. at 1157).

Here, we have no record from the telephonic conference held by Judge Loving. The record, however, that we do have before us does not support recusal. As noted above, any remarks made by the court clerk to Appellant would not support a bias challenge. Moreover, the record reveals that Judge King made every effort to accommodate Appellant, who is in prison, by holding telephonic hearings on the motions he filed and that he granted Appellant's motion to have Jones amend the inventory. Having reviewed the record, we hold that Judge King did not demonstrate a bias that would support recusal. *See In re K.M.K.*, No. 04-02-00144-CV, 2002 WL 31760938, at *1 (Tex. App.—San Antonio Dec. 11, 2002, pet. denied) (holding that, after reviewing the record, neither judge demonstrated a bias that would support recusal), *cert. denied*, 540 U.S. 1127 (2004). We overrule Appellant's sixth issue.

10

## IV. DECLARATORY JUDGMENT

### A. Alleged Failure to Enter a Declaratory Judgment

In his first issue, Appellant argues that the probate court abused its discretion when it allegedly refused to render or enter a declaratory judgment in the case. Specifically, Appellant interprets the probate court's statement at the February 13, 2007 telephonic hearing that it was "declining to find the trust was ever funded" as a refusal to enter a declaratory judgment. However, Appellant's first issue does not comport with his other issues on appeal in which he complains that the probate court abused its discretion "when it rend[ered] judgment against the appellant's delcaratory judgment" and "when it denied the appellant's motion for declaratory judgment relief." Because the record demonstrates that the trial court entered a negative declaration—declaring that the trust was never funded—on Appellant's motion for declaratory judgment, we overrule Appellant's first issue. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.003(b) (Vernon 2008) (permitting the declaration to be either affirmative or negative in form and effect).

### B. Effect of Declaratory Judgment

In his second through fourth issues, Appellant argues that the probate court abused its discretion by rendering judgment against his motion for declaratory judgment; by granting Jones's res judicata defense, thereby denying

11

his motion for the imposition of a constructive trust; and by denying his motion for summary judgment. Because all three of Appellant's arguments center around the probate court's declaration that the trust was never funded, we begin with the declaratory judgment.

We review declaratory judgments under the same standards as other judgments and decrees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 2008). The trial court's decision, being one of law, will be upheld on appeal if it can be sustained on any legal theory supported by the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984); *Truck Ins. Exch. v. Musick*, 902 S.W.2d 68, 69–70 (Tex. App.—Fort Worth 1995, writ denied).

Here, the record contains waivers from two of the beneficiaries of the trust, including Appellant. The waiver specifically states that "[t]he Trust created was never funded so far as I can determine" and that the beneficiary "DISCLAIM[S] any and all interest in the ALBERTA REESE CONNALLY TRUST instrument." The record also contains a copy of the trust instrument and an application to determine the effect of the revocable trust, stating that the trust was never funded. Because the probate court had evidence before it to support its declaration, we hold that the trial court did not abuse its discretion by declaring that the trust at issue was never funded.

12

The trial court initially announced this declaration in a letter to the parties on March 22, 2007. Although Appellant did not believe that the probate court's letter of March 22, 2007, constituted a rendition of judgment, his belief is not the measure we use to determine whether judgment was rendered.

Rendition of judgment and entry of judgment are distinct actions. *See Burrell v. Cornelius*, 570 S.W.2d 382, 384 (Tex. 1978). Judgments usually go through three stages: rendition, reduction to writing, and entry. *Oak Creek Homes, Inc. v. Jones*, 758 S.W.2d 288, 290 (Tex. App.—Waco 1988, no writ). A trial court renders judgment by oral pronouncement of its decision in open court or by a signed, written memorandum filed with the clerk. *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857–58 (Tex. 1995). To constitute rendition, the court's pronouncement "must clearly indicate the intent to render judgment at the time the words are expressed." *Id.* at 858. After rendition, the trial court or the prevailing party prepares a written judgment that is signed by the court. *In re Ruiz*, 16 S.W.3d 921, 924 n.3 (Tex. App.—Waco 2000, orig. proceeding). After the court signs the judgment, the trial court clerk enters the written judgment on the minutes of the court. *Burrell*, 570 S.W.2d at 384.

Here, we do not have a record from the telephonic hearing that was held on February 13, 2007, so we cannot determine what was said in open court. However, the March 22, 2007 letter from the probate court to the parties

13

clearly constitutes a rendition of judgment based on the statement, "As I indicate[d] during our telephonic hearing, I am granting the complaint for additional inventory, but I am declining to find the trust was ever funded." The probate court affirmed this in its October 10, 2007 letter to the parties, explaining that judgment had been rendered but that a formal judgment had not been signed due to the motion to recuse. We therefore hold that the probate court rendered judgment on March 22, 2007, when it declared that the trust had never been funded.

Because the probate court rendered judgment on Appellant's motion for declaratory judgment on March 22, 2007, it properly granted Jones's res judicata defense when Appellant later filed a motion for constructive trust arguing that he had been fraudulently induced into signing the waiver. As the probate court noted, Appellant had never asked prior to the declaration for the probate court to hold that the waiver he signed was invalid or void. Because of Appellant's failure to timely ask for such relief, that issue was foreclosed after the probate court declared that the trust had never been funded. *See Welch v. Hrabar*, 110 S.W.3d 601, 607 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (stating that res judicata prevents the relitigation of adjudicated claims or claims that could have been raised). Moreover, the record reveals that the property at issue had already been distributed to the heirs

14

named in the will, making Appellant's request for the imposition of a constructive trust moot. And because Appellant's motion for summary judgment was based on the alleged necessity of a constructive trust, the probate court did not abuse its discretion by denying his motion for summary judgment in light of its previous rulings that declared that the trust had never been funded and that Appellant's argument for a constructive trust was barred by res judicata.

We therefore hold that the probate court did not abuse its discretion by making the declaration, granting Jones's res judicata defense, and by denying Appellant's motion for summary judgment. We overrule Appellant's second through fourth issues.

## V. OBJECTIONS TO AMENDED INVENTORY

In his fifth issue, Appellant argues that the probate court erred by overruling his written objections to the amended inventory, appraisement, and list of claims. Jones responds that the probate court entered an order that it felt the law required and that she complied with the order.

The time line of events related to the inventory follows:

October 12, 2005      Jones filed her initial Inventory.

October 21, 2005      The probate court signed an order approving the initial inventory.

15

December 20, 2006    Appellant filed a complaint for an additional inventory.

February 13, 2007    Jones filed a response to Appellant's complaint for an additional inventory, and the probate court held a telephonic hearing on Appellant's complaint for additional inventory.

March 22, 2007    The probate court sent a letter to the parties granting Appellant's complaint for additional inventory and specifying the changes Jones needed to make to the inventory.

June 5, 2007    Jones filed the amended inventory and a *blank* order approving the inventory.

June 8, 2007    Appellant filed the motion to recuse Judge King.

June 19, 2007    Appellant filed a complaint alleging that the amended inventory is erroneous.

July 6, 2007    Judge Joe Loving denied Appellant's motion to recuse.

October 10, 2007    The probate court signed orders, including an order related back to the February 13, 2007 telephonic hearing, which specified how the inventory needed to be amended.

The record before us does not, however, contain a signed order approving the amended inventory nor does it contain a ruling from the probate court on Appellant's complaint to the amended inventory. Although one of the probate court's orders from October 10, 2007, contains language that "[a]ll other relief sought by either party herein and not granted hereby is expressly denied" and would implicitly deny Appellant's complaint, such language would not appear

16

to encompass ruling on the amended inventory, which needs to be either approved or disapproved—not denied. Such a ruling on the amended inventory is a prerequisite for Appellant to bring his complaint on appeal. *See Anderson v. Anderson*, 535 S.W.2d 943, 944 (Tex. Civ. App.—Waco 1976, no writ) (stating that an order of the probate court approving or modifying the inventory and appraisement has been held to be appealable). We therefore hold that Appellant's argument complaining about the amended inventory is not ripe because there is no signed order approving the amended inventory. We overrule Appellant's fifth issue.

## VI.  MOTION FOR SANCTIONS

In his seventh issue, Appellant argues that the probate court abused its discretion by denying his motion for sanctions. Specifically, Appellant argues that "to the extent that the court denied the motion because the appellant put to its attention that it had not [given] fair notice, that was an abuse of discretion, because the law require[s] fair notice" and that "to the extent that the court . . . already had his mind made up to deny the sanctions without taking judicial notice of the evidence and without ever hearing evidence—that was an abuse of discretion." Appellant contends that because the probate court stated in its October 10, 2007 letter that "[t]he Motion for Appointment of an Ad Litem is not well taken and has no basis in law," the decision not to

17

sanction Jones and her counsel was a clear abuse of discretion. Jones responds that Appellant's arguments and the facts in the record fail to establish legal bases for the imposition of sanctions.

We review a ruling on a motion for sanctions under an abuse of discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). The test under this standard "is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but 'whether the court acted without reference to any guiding rules and principles.'" *Id.* The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Id.* Moreover, rule 13 requires courts to presume that pleadings are filed in good faith. Tex. R. App. P. 13; *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993). The burden is on the party moving for sanctions to overcome this presumption. *Tanner*, 856 S.W.2d at 731.

Here, although the probate court stated in its October 10, 2007 letter to the parties that "[t]he Motion for Appointment of an Ad Litem is not well taken and has no basis in law," it had the discretion to choose whether to award sanctions and chose not to. After reviewing the record, we cannot say that the probate court's decision was arbitrary or unreasonable. We therefore hold that the trial court did not abuse its discretion by denying Appellant's motion for sanctions. *See Wilson v. Wachsmann*, No. 03-04-00504-CV, 2006 WL

18

1865522, at \*6 (Tex. App.—Austin July 7, 2006, no pet.) (mem. op.) (concluding that district court did not abuse its discretion by denying the Wilsons' motion for sanctions, which was based on filing groundless pleadings); *Yamaha Suzuki of Tex., Inc. v. Martinez*, No. 10-02-00239-CV, 2004 WL 1588258, at \*1–2 (Tex. App.—Waco July 14, 2004, pet. denied) (mem. op.) (holding that no abuse of discretion occurred in the denial of the motion for sanctions even though the party moving for sanctions contended that the other party had filed petitions and affidavits that contained false statements).  We overrule Appellant's seventh issue.

## VII. CONCLUSION

Having overruled Appellant's seven issues, we affirm the two October 10, 2007 orders of the probate court that Appellant challenges in this appeal.

SUE WALKER
JUSTICE

PANEL: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

DELIVERED:  October 9, 2008