**CONDITIONALLY GRANTED and Opinion Filed March 18, 2024**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-23-01085-CV

## IN RE DREAM DALLAS, LLC AND EIFFEL HOLDINGS, LLC, Relators

### Original Proceeding from the 162nd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-22-02275

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Carlyle, and Garcia
Opinion by Justice Partida-Kipness

In this original proceeding, Dream Dallas, LLC and Eiffel Holdings, LLC (Relators) seek a writ of mandamus compelling the trial court to vacate an October 25, 2023 order granting a motion to quash filed by AAA Home Builder, LLC (AAA) and Hassan Naser (together, Real Parties). The motion to quash concerned discovery requests Relators served on two nonparty banks. The order compelled Relators to destroy financial documents produced by the banks in response to the discovery requests and prohibited Relators from using the documents during the case. We conditionally grant the writ.

# BACKGROUND

This proceeding arises out of a construction dispute. Relators own several properties in east Dallas and contracted with Real Parties to build condominiums thereon. Project delays ensued, and the parties amended their agreement to include deadlines for certain portions of the construction project. The amended agreement provided for liquidated damages if those deadlines were not met. Further disputes arose between the parties, leading Relators to file suit against Real Parties in February 2022.

Relators alleged Real Parties failed to pay liquidated damages accrued due to construction delays. Relators further alleged Real Parties received additional payments for horizontal construction work not performed, and that Real Parties had retained a refund from the City of Dallas for horizontal development work that rightfully belonged to Relators. Relators brought claims for breach of contract, fraud, and money had and received. Later, Relators began to suspect fraudulent transfers from AAA after Relators learned AAA had terminated its existence and Naser had previously incorporated several entities engaged in the same line of business as AAA. Relators sought leave to add additional parties and theories of recovery.

During discovery, Relators sought production of AAA's financial records directly from Real Parties. Relators contended these documents were relevant to the issue of how much refund money Real Parties received from the City of Dallas. Real Parties objected to these requests as overly broad, irrelevant, and seeking

confidential financial information unrelated to Relators' claims. Unsatisfied with Real Parties' discovery responses, Relators filed a motion to compel in April 2023. On April 14, 2023, the trial court denied Relators leave to add additional causes of action but extended the discovery deadline.

Around April 26, 2023, Relators issued subpoenas to nonparties Bank of America and First United Bank & Trust—institutions at which AAA purportedly held accounts—attempting to acquire the financial documents they had been unable to get directly from Real Parties. Relatedly, Relators noticed depositions on written questions to the records custodians for the banks and sought production of:

> Any and all banking records and documents reduced to writing, or in any other storage medium, including but not limited to, originals and non-identical copies of, letters, telegrams, memoranda, reports or records, ledgers, journals, invoices, bills, financial and business records, receipts, contracts, reports, diary entries, agendas, notes, charts, forms, tabulations, analyses, statistical or informational accumulations, guidelines, instructions, handbooks, manuals, operating procedures, graphs, and all other records in your possession, custody or control pertaining to AAA Home Builder, LLC.

Relators used a discovery service for issuing the subpoenas. On May 9, 2023, Real Parties filed a motion to quash, motion for protective order, and objections related to the nonparty subpoenas. The motion was served on the nonparty banks.

On May 10, 2023, an associate judge heard Relators' motion to compel related to the discovery previously sought directly from Real Parties. However, the court did not rule on the discovery regarding the financial information sought directly from Real Parties. The motion to quash and for protection related to the nonparty

subpoenas had not been formally set for hearing at that time. Those motions were scheduled to be heard on August 2, 2023, but due to a trial court scheduling conflict, the hearing was reset to October 25, 2023.

In the interim, near the end of July 2023, the nonparty banks sent Relators copies of the subpoenaed documents. After learning of this, Real Parties supplemented the motion to quash and for protection, asserting Relators had circumvented discovery rules by directing its discovery service to serve the subpoenas on the nonparty banks prior to the court's hearing on Real Parties' motion to quash and for protection.

At the October 25, 2023 hearing on the motion to quash, the trial court admonished Relators for pursuing and receiving the bank documents after the motion to quash was filed. The court stated Relators' counsel committed an "egregious" mistake. That same day, the court entered the order granting the motion to quash. The court ordered Relators' counsel to destroy—within three days—every bank record of AAA obtained from the nonparty banks in connection with the subpoenas and to confirm such destruction with the court. The trial court further ordered that Relators were prohibited from using or introducing any of the bank records at any deposition, motion, response, or trial of the case.[1] Relators then petitioned this Court for mandamus relief from the trial court's order.

---

[1] Trial was set for February 20, 2024. On our own motion, we stayed the trial by order dated February 16, 2024.

## STANDARD OF REVIEW

To obtain relief by writ of mandamus, the relator must establish a clear abuse of discretion and no adequate remedy by appeal. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding). An abuse of discretion occurs when a trial court's ruling is arbitrary and unreasonable, made without regard for guiding legal principles or supporting evidence. *Id.* Similarly, a trial court abuses its discretion when it fails to analyze or apply the law correctly. *Id.* And, the party may demonstrate the court erred in "determining what the law is or applying the law to the facts, even when the law is unsettled." *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 247 (Tex. 2021) (orig. proceeding) (citations omitted).

Trial courts have broad discretion to decide whether to permit or deny discovery. *Id.* Generally, they abuse that discretion only if their decision is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* A discovery order that denies a party's requested discovery on improper grounds and thus prevents that party from developing a claim or defense that goes to the heart of its case is an abuse of discretion for which mandamus may be appropriate. *In re Liberty Cnty. Mut. Ins. Co.*, 679 S.W.3d 170, 174 (Tex. 2023) (orig. proceeding). If a discovery order vitiates or severely compromises a party's ability to present a viable claim or defense at trial, an appeal is not an adequate remedy. *Id.* at 176.

**ANALYSIS**

Relators contend the trial court abused its discretion in ordering the destruction of documents obtained by subpoena and prohibiting any use of those documents during the case. Relators contend these actions were tantamount to sanctions against Relators, who are left without an adequate remedy by appeal. After reviewing the petition, response, and the mandamus record, we agree.

## I. The Trial Court Abused Its Discretion

### A. Scope of discovery

Our procedural rules permit discovery of "any matter that is not privileged and is relevant to the subject matter of the pending action." *K & L Auto Crushers*, 627 S.W.3d at 247–48 (quoting TEX. R. CIV. P. 192.3(a)). This includes information that "will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Because the purpose of discovery is to enable courts to decide disputes based on "what the facts reveal, not by what facts are concealed," the rules must be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial." *Id.* (first quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 394 (Tex. 2014); and then quoting *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990) (orig. proceeding)).

**B. Relators did not abuse discovery by seeking or receiving documents from nonparties**

Our rules of procedure permit discovery from nonparties by serving a subpoena compelling, as here, depositions on written questions and requests for production of documents and tangible things. TEX. R. CIV. P. 200.1, 205.1. The nonparty must respond to the subpoena in accordance with Rule 176.6. TEX. R. CIV. P. 205.3(d).

Rule 176.6 generally governs responses to discovery subpoenas. The rule provides:

> (a) Compliance Required. Except as provided in this subdivision, a person served with a subpoena must comply with the command stated therein unless discharged by the court or by the party summoning such witness. A person commanded to appear and give testimony must remain at the place of deposition, hearing, or trial from day to day until discharged by the court or by the party summoning the witness.
>
> ***
>
> (d) Objections. A person commanded to produce and permit inspection or copying of designated documents and things *may serve* on the party requesting issuance of the subpoena--before the time specified for compliance--*written objections* to producing any or all of the designated materials. A person *need not comply with the part of a subpoena to which objection is made* as provided in this paragraph unless ordered to do so by the court. The party requesting the subpoena may move for such an order at any time after an objection is made.
>
> (e) Protective Orders. A person commanded to appear at a deposition, hearing, or trial, or to produce and permit inspection and copying of designated documents and things, and any other person affected by the subpoena, *may* move for a protective order under Rule 192.6(b)--before the time specified for compliance--either in the court in which the action is pending or in a district court in the county where the subpoena was served. The person must serve the motion on all parties in

accordance with Rule 21a. A person *need not comply* with the part of a subpoena from which protection is sought under this paragraph unless ordered to do so by the court. The party requesting the subpoena may seek such an order at any time after the motion for protection is filed.

TEX. R. CIV. P. 176.6(a), (d)–(e) (emphasis ours). In sum, Rule 176.6 requires compliance with the subpoena but provides the nonparty an opportunity to object to such and refuse to comply until ordered to do so by the court. The rule also gives the nonparty and other persons affected by the subpoena the right to move for protective orders. However, nothing in the rule prohibits a nonparty from complying with the discovery subpoena if it chooses to do so.

The trial court's order does not specify the grounds for ordering the destruction of the documents and barring their use during the case. At the hearing on Real Parties' motion to quash, the court appeared to believe Relators had affirmative duties to (1) inform the nonparties (or the discovery service) not to send the documents in light of the pending motion to quash and for protective order, and (2) return any documents received from the nonparties. The trial court believed the procedural rules permitting motions for protective order would be thwarted if parties could obtain documents before the motion could be heard. The court concluded Relators' counsel had committed an "egregious" mistake.

However, neither of the nonparty banks objected to Relators' subpoenas. And even though the banks could refuse to comply with the request, they chose to comply, even after receiving notice of Real Parties' motion to quash, motion for protective order, and objections. *See* TEX. R. CIV. P. 176.6(d), (e), 205.3(d). Real

–8–

Parties have not directed us to any rule or caselaw holding that a litigant abuses the discovery process by receiving discovery materials from a nonparty that has freely chosen to comply with a subpoena. Furthermore, the discovery rules are not thwarted under such circumstances. The rules contemplate motions for protective orders by the litigants (or others) to protect themselves in the event sensitive or impermissible documents have been produced by the nonparty. That the hearing on such a motion might occur after documents have been produced does not rob the trial court of the ability to fashion appropriate relief, a subject we discuss below. Accordingly, to the extent the trial court determined Relators abused the discovery process, the trial court abused its discretion.

### C.     The trial court should have considered other remedies

We next consider the trial court's chosen remedy for Relators' alleged abuse of discovery: requiring Relators to destroy the financial records and prohibiting any use thereof.

Rule 215.3 authorizes a trial court to impose sanctions for discovery abuse. TEX. R. CIV. P. 215.3. Sanctions which terminate or inhibit the presentation of the merits of a party's claims are generally authorized by Rule 215. *Braden v. Downey*, 811 S.W.2d 922, 929 (Tex. 1991). The effect of such sanctions is to adjudicate claims or defenses, not on their merits, but on the manner in which a party or his attorney has conducted discovery. *Id*. However, such sanctions must be reserved for circumstances in which a party has so abused the rules of procedure, despite

imposition of lesser sanctions, that the party's position can be presumed to lack merit, and it would be unjust to permit the party to present the substance of that position before the court. *Id.*

A sanction imposed under Rules 215.2 and 215.3 must be "just." *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding). We measure whether a sanction is just by two standards. First, a direct relationship must exist between the offensive conduct and the sanctions imposed. *Id*. "Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes." *Id.* Courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. *Id.* Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *Id.*

Sanctions that have the effect of adjudicating a claim or precluding a decision on the merits of the case are referred to as "death-penalty" sanctions. *In re First Transit Inc.*, 499 S.W.3d 584, 591 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding) (citing *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 732 (Tex. 1993)). "Death-penalty" sanctions are harsh and may be imposed as an initial sanction only in the most egregious and exceptional cases. *Id.* (citing *Cire v. Cummings*, 134 S.W.3d 835, 842 (Tex. 2004)). Although death-penalty sanctions

typically involve striking pleadings or rendering a default judgment, any sanctions that are case determinative may constitute death-penalty sanctions, including those that exclude essential evidence. *Id.* at 592. Whether a discovery order is tantamount to a death-penalty sanction depends on the circumstances of the case. *See Paselk v. Rabun*, 293 S.W.3d 600, 609 (Tex. App.—Texarkana 2009, no pet.).

Here, Relators argue the trial court sanctioned them by ordering destruction of the financial documents and prohibiting their use during the case. The transcript from the hearing on the motion to quash supports that assertion. Near the conclusion of the hearing, the trial court admonished Relators' counsel for not knowing he should not have pursued or received the documents after Real Parties filed the motion to quash. The court further stated counsel's conduct in acquiring the documents was an "egregious" mistake. The court issued its order immediately thereafter. The order required immediate destruction of the documents and confirmation of their destruction to the trial court and wholly prohibited Relators from using the documents during the case. Sanctions under Rule 215 include "prohibiting [the party] from introducing designated matters in evidence." TEX. R. CIV. P. 215.2(b)(4), 215.3. Under this record, the trial court essentially sanctioned Relators for conduct it believed violated discovery rules.

Furthermore, we do not believe the sanction imposed by the trial court was "just," as required by the rules or case law. *See Powell*, 811 S.W.2d at 917. First, there is no relationship between any offensive conduct and the sanctions imposed

–11–

because, as we have explained, we do not believe Relators engaged in misconduct. Second, even if there were misconduct, the sanction was excessive. Relators argued the bank documents were relevant to their claims for breach of contract and money had and received. Relators alleged Real Parties received refund money from the City of Dallas that belonged to Relators. Relators also alleged they provided money to Real Parties for which no work was performed. Bank records would tend to show— or lead to evidence that shows—how much was received, when it was received, and how the funds were used. Requiring complete destruction of the documents and wholly barring their use tends to thwart the presentation of the merits of the case or a decision thereon.

Real Parties argue the trial court did not impose any sanctions for alleged discovery abuse. They assert the court was empowered by Rule 192.6 to issue a protective order prohibiting Relators from seeking the discovery and ordering the results of discovery be "sealed or otherwise protected." *See* TEX. R. CIV. P. 192.6(b)(1), (5). However, destruction of the evidence and a complete bar to its use during any litigation proceeding go beyond mere protection. Even if the trial court was correct to conclude Relators had violated discovery rules, its solution went too far. The record does not indicate the court considered the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. *Powell*, 811 S.W.2d at 917.

In the trial court, Real Parties initially objected on the grounds the requests were overly broad, not limited in time, not relevant, and invaded personal and property rights. The order does not reflect whether the trial court was motivated by any of these objections, and we do not hold that Relators were entitled to all of the documents produced by the nonparties. Nonetheless, if the trial court believed the requests were overly broad or some documents were not likely to lead to relevant evidence, the trial court could have narrowed the discovery or limited its use. The court also could have fashioned ways to protect Real Parties and others from sensitive information or misuse of the documents. However, by ordering destruction of all the documents and wholly barring Relators from using any of them during any stage of the litigation, the trial court abused its discretion. *See Liberty Cnty. Mut. Ins.*, 679 S.W.3d at 175 (quoting TEX. R. CIV. P. 192 cmt. 7) (A court "abuses its discretion in unreasonably restricting a party's access to information through discovery.").

## II.    No Adequate Remedy by Appeal

We further conclude mandamus relief is appropriate in this case. In addition to showing the trial court abused its discretion, Relators may obtain mandamus relief only if they also show they have "no adequate remedy by appeal." *K & L Auto Crushers*, 627 S.W.3d at 256. An appellate remedy may not be adequate where (1) an appellate court cannot cure the discovery error, such as when confidential information is erroneously made public, (2) the party's ability to present a viable

claim or defense—or reasonable opportunity to develop the merits of the case—is "severely compromised" so that the trial would be a waste of resources, or (3) discovery is disallowed and cannot be made part of the appellate record such that a reviewing court is unable to evaluate the effect of the trial court's error based on the record. *Id.* A party's ability to present and develop its case may be severely compromised when the denied discovery goes "to the very heart" of a party's case and prevents it from "developing essential elements" of its claim or defense. *Id.*

We conclude Relators have no adequate remedy by appeal because they have effectively been denied a reasonable opportunity to develop claims that go to the heart of their case. Relators brought claims for breach of contract, fraud, and money had and received. The parties dispute the amount of money refunded to Real Parties by a third party, Dallas County, and whether Real Parties were paid for work not performed as contemplated by the contracts. The circumstances of how much money Real Parties received from Dallas County, and Relators' alleged entitlement to it, go to the heart of a claim for money had and received.[2] Furthermore, whether monies received by Real Parties went to construction as contemplated by the contracts would implicate breach of contract claims. The order requiring the financial documents' destruction and complete bar against their use thwarts Relators' ability to develop

---

[2]     To prove a claim for money had and received, a plaintiff must show (1) a defendant holds money (2) which in equity and good conscience belongs to the plaintiff. *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 814 (Tex. App.—Dallas 2012, no pet.). "The question in an action for money had and received, is to which party does the money, in equity, justice, and law, belong." *Id.* at 813 (citations omitted).

and present their case.[3] We also conclude Relators have no adequate remedy by appeal because a reviewing court will be unable to evaluate the effect of the trial court's denial of discovery from the nonparty banks. The missing discovery is from third parties and cannot be made part of the appellate record or challenged on appeal, and the banks will not be parties to any appeal. *See K & L Auto Crushers*, 627 S.W.3d at 257. Furthermore, it would be difficult to determine on appeal whether the lack of discovery erroneously affected the outcome of the trial. *Id*. We conclude Relators have no adequate remedy by appeal.

## CONCLUSION

We hold the trial court abused its discretion to the extent it concluded Relators abused the discovery process. We further hold the trial court abused its discretion in ordering the destruction of the financial records and barring Relators from using them during the litigation. We also conclude Relators have no adequate remedy by appeal.

Accordingly, we conditionally grant the writ of mandamus and lift the stay imposed by our order dated February 16, 2024. We direct the trial court to vacate its October 25, 2023 order on Real Parties' motion to quash, motion for protective

---

[3] Relators contend the requested discovery is necessary to investigate and support other claims they seek to add to their petition, for example, fraudulent transfers of AAA's assets. Real Parties argue Relators cannot use discovery to fish for evidence of new claims. We do not hold Relators are entitled to the discovery to fish for additional claims. *See In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding). We simply conclude at least some of the information sought is likely relevant to the subject of the action and "is reasonably calculated to lead to the discovery of admissible evidence" regarding the claims in Relators' petition. *See* TEX. R. CIV. P. 192.3(a).

order, and objections to Relators' deposition on written questions and subpoena duces tecum within fourteen days of this opinion. We are confident the trial court will comply with our order. A writ will issue only if the trial court fails to comply.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

231085F.P05