

## In the
## Court of Appeals
## Second Appellate District of Texas
## at Fort Worth

_____

No. 02-24-00483-CV

_____

CARL JOHNSON AND PATRICIA JOHNSON, Appellants

V.

WINDSONG RANCH COMMUNITY ASSOCIATION, Appellee

_____

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 22-7967-431

_____

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

In 2022, Appellee Windsong Ranch Community Association (the HOA) imposed a $100 fine on Appellant Carl Johnson for violating a HOA rule by having drinks in the neighborhood pool. Carl and his wife, Appellant Patricia Johnson, responded by filing suit. The years of litigation that followed were what the trial court described as "the single most time-consuming case th[e c]ourt ha[d] dealt with in [its] time on the bench."

When the case finally went before a jury, the genuine fact issues had been whittled down to a small number of elements within two causes of action, one of which was an HOA counterclaim based on the Johnsons' breach of an indemnification provision in a pool-related release. The provision's interpretation and breach had already been decided as a matter of law, and the jury found that the Johnsons' breach had caused the HOA more than $200,000 in damages in the form of attorney's fees. The trial court entered judgment accordingly. And when it did, it also sanctioned the Johnsons and their counsel for making sworn misrepresentations to the court, filing groundless claims, and engaging in similarly questionable activities.

The Johnsons now appeal, challenging both the fee-based damages award— which they assert was neither legally authorized nor properly segregated—and the sanctions orders—which they claim were based on factually inaccurate findings and an improper measurement. But the Johnsons' arguments feign ignorance of the foundational issues and legal rulings that underlie the challenged aspects of the

2

judgment. And because they attempt to sidestep those issues rather than acknowledging and refuting them, their challenges fail. We will affirm.

## I. Background

The Johnsons live in Windsong Ranch, a development governed by the HOA. The development's common amenities include a pool, and during the relevant time period, the HOA employed Bearfoot Companies, LLC to monitor and manage the pool. The Bearfoot pool monitors had several tense encounters with the Johnsons.

### A. Pool Disputes

A few years before the drinks-in-the-pool incident at issue here, a Bearfoot employee interacted with the Johnsons' son, and the Johnsons considered the employee's actions improper, so they sued Bearfoot, ultimately settling the case.[1] It was not long after the settlement, in mid-2022, when a Bearfoot pool monitor observed Carl in the pool with an alcoholic beverage—a violation of a HOA rule— and the HOA fined Carl $100. According to the Johnsons, Carl was not at the pool when the alleged violation occurred; Patricia and another man—Errol Hand—were the perpetrators who had drinks in the pool. The Johnsons thus viewed the $100 fine

---

[1] A Bearfoot employee spoke with the Johnsons' then-13-year-old son in the pool office, and due to concerns reported by a neighbor, the employee asked the son if he was being mistreated. According to the Johnsons, the employee's actions were improper and amounted to an "abduct[ion]" of their son.

as Bearfoot and the HOA's targeting them in retaliation for the prior dispute involving their son. They paid the fine[2] but appealed it to the HOA board.

The HOA board held a meeting on the matter, and the Johnsons attended, represented by Carl's later trial counsel.[3] At the hearing, the board asked nonparty observers to leave the room unless and until they were called as witnesses. But when the Johnsons and their counsel were given the opportunity to call witnesses and present argument, they declined to do so; Carl's counsel instead stated, "No comment." Nonetheless, the HOA board suspended Carl's $100 fine.

## B.    Litigation

Despite the fine's suspension, the Johnsons filed "myriad causes of action against the HOA and Bearfoot," including claims for breach of the covenant of quiet enjoyment, intrusion on seclusion, and money had and received. *Johnson v. Bearfoot Cos., LLC*, No. 02-23-00366-CV, 2024 WL 2202033, at *1 (Tex. App.—Fort Worth May 16, 2024, no pet.) (mem. op.); *Johnson v. Windsong Ranch Cmty., Ass'n, Inc.*, No. 02-23-00385-CV, 2024 WL 725523, at *1 (Tex. App.—Fort Worth Feb. 22, 2024, no pet.) (mem. op.). The number of active claims ebbed and flowed in the litigation that followed.

---

[2]The Johnsons received several erroneous invoices for the fine, and as a result, they paid it more than once.

[3]Carl and Patricia hired separate counsel for the trial court proceedings, but they pursued their cases together, filing joint pleadings and motions.

The Johnsons' claims against Bearfoot were dismissed under Rule of Civil Procedure 91a, and we affirmed the severed dismissal, holding that the relevant claims—including the claims against Bearfoot for breach of the covenant of quiet enjoyment and intrusion on seclusion—lacked a legal or factual basis. *Bearfoot*, 2024 WL 2202033, at *1–11; *see* Tex. R. Civ. P. 91a.1. Meanwhile, the Johnsons' parallel claims against the HOA continued, though many were disposed of in summary judgment rulings. *See Windsong*, 2024 WL 725523, at *2. The HOA also added a counterclaim for breach of contract to the mix, asserting that the Johnsons' lawsuit had triggered their obligation to indemnify the HOA under Windsong's Facilities Use Agreement (the Agreement).

Windsong residents executed the Agreement to obtain access to the community's common amenities. In the Agreement, the resident "release[d the HOA], on behalf of [him]self and any minor child to whom [he is] guardian, . . . from liability for any claims, demands, and causes of action with respect to the [common amenities]." [Formatting altered.] The resident further "AGREE[D] THAT, in consideration for the [HOA's] . . . granting [him] access to . . . [the pool] and any other common amenities of Windsong Ranch . . . for [his] voluntary personal use for physical, relaxation, and other activities, [he] w[ould] . . . indemnify, defend, and hold harmless [the HOA] from all liability associated with use of the [common amenities]

5

by [the resident] and [his] Guests."[4]   According to the HOA, these contractual commitments released it from all liability associated with the Johnsons' use of the pool and obligated the Johnsons to indemnify the HOA by paying its attorney's fees. The Johnsons, however, denied any such obligation and made it clear that they would not pay the HOA's attorney's fees.

The Johnsons sought dismissal of the HOA's indemnification counterclaim, but the trial court denied the dismissal motion, and in an interlocutory appeal, we affirmed. *See id.* at *1–9 (reviewing Johnsons' interlocutory appeal from denial of Texas Citizens Participation Act motion to dismiss).  But doing so required us to construe portions of the Agreement. *See id.* at *3–8.  As relevant here, we recognized that

- the HOA's "only obligation" under the Agreement was "to provide the Johnsons access (via the issuance of access cards) to the . . . common areas";

- the Johnsons' execution of the Agreement released all of their claims against the HOA "with respect to" the common amenities and committed them to indemnifying the HOA for "all liability associated with [their] use" of the common amenities; and

- the Johnsons' claims stemmed from their alleged unfair treatment in the common amenities and were thus claims "associated with" their use of those amenities, "trigger[ing] their obligation to indemnify the HOA for its attorney's fees and costs," *id.* at *5–6.

With these issues settled, the dispute returned to the trial court.

---

[4]"My Guests" was defined in the Agreement to include the signatory, his family members, and his "guests, tenants, occupants, agents, and/or invitees."

## C.    Jury Trial

Following remand, the case went before a jury.  By then, it had been narrowed to just two causes of action:  (1) the Johnsons' claim against the HOA for money had and received based on the $100 fine and (2) the HOA's counterclaim against the Johnsons for breach of the Agreement's indemnification provision.  The second cause of action—the HOA's counterclaim—also involved an affirmative defense:  the Johnsons asserted prior material breach of the Agreement, claiming that the HOA's harassment had prevented them from using the common amenities for "relaxation" as the Agreement had contemplated.

When the time came for the jury to be charged on the two causes of action and affirmative defense, the dispute had narrowed even further.  As relevant here, the trial court determined (or reiterated) that, as a matter of law, (1) the indemnification language in the Agreement required the Johnsons to pay the HOA's attorney's fees for all liability "associated with" the Johnsons' use of the common amenities; and (2) because the HOA's only commitment under the Agreement was to grant access to the common amenities, and because the Johnsons did not allege or present any evidence that the HOA had denied them access, there was no evidence of prior material breach.  Thus, the jury was asked to determine only (1) whether the HOA had wrongfully withheld funds belonging to the Johnsons (as alleged in the Johnsons' money had and received claim), and if so, how much; and (2) the amount of reasonable and necessary attorney's fees required for the HOA's defense against the

7

Johnsons' claims. On these two questions, the jury found that the HOA had wrongfully withheld $100 from Carl and that the Johnsons' claims had caused more than $200,000 in attorney's fees.[5] The trial court entered judgment accordingly.

But when it entered judgment, the court also ordered the Johnsons and their counsel to pay sanctions—and not for the first time.

## D.    Sanctions Orders

Well before the judgment, the trial court expressed concern regarding the Johnsons' and their counsel's conduct.

### 1.    Pretrial Sanctions

In 2023, the trial court ordered the Johnsons and their counsel to show cause why they should not be sanctioned for repeatedly filing a "false" declaration from Carl's counsel and relying upon it as summary judgment evidence.[6]

In the declaration, Carl's counsel had declared that, "at the appeal hearing to the [HOA] Board, . . . [o]ur witness, Errol Hand . . . was excluded by Defendant."

---

[5]Specifically, the jury found the reasonable and necessary fee for the HOA's defense to be $210,000 in the trial court; $31,000 for representation in the court of appeals; $16,000 for the petition for review stage in the Texas Supreme Court; and $12,000 for oral argument and further proceedings in the Texas Supreme Court.

[6]The HOA moved for sanctions under Rule of Civil Procedure 13 and Chapter 10 of the Civil Practice and Remedies Code. It also moved to disqualify Carl's counsel because, by filing a declaration based on his personal knowledge of the HOA board meeting, he had held himself out as a fact witness. At the subsequent show-cause hearing, counsel denied that his declaration made him a fact witness and represented to the trial court that he would not testify as such.

8

But when this declaration was questioned at the show-cause hearing, the uncontroverted evidence—including an audio recording of the HOA board meeting —showed that the Johnsons had been given the opportunity to call witnesses and had affirmatively declined to do so. Although Errol Hand had been among the individuals asked to leave the room unless and until he testified, the Johnsons made no attempt to call him as a witness. Nonetheless, Carl's counsel doubled down on his declaration, insisting that the HOA had "excluded all the residents, excluded my witnesses" by asking nonparties to step out of the room.

The trial court found that the declaration was an "attempt[] . . . to mislead the Court," stating that Carl's counsel had "strain[ed] the common meaning of the word[] . . . 'excluded' to justify his declaration and his arguments."[7] The court ordered the Johnsons and their counsel to pay $3,710 based on the "false" declaration (Pretrial Sanctions).

It was against this backdrop that the trial court imposed sanctions in the final judgment (Judgment Sanctions).[8]

---

[7]The court noted that the Johnsons had used the false declaration to support multiple joint filings and that these "groundless" filings were "presented for an improper purpose to cause unnecessary delay and needless increase in the cost of litigation."

[8]In the interim, not long after the Pretrial Sanctions, the court set another show-cause hearing based on other conduct: the Johnsons' filing of six supplemental petitions in less than four months, each time purporting to add new causes of action. The hearing occurred in early 2024; neither the Johnsons nor their counsel appeared. However, because the case had been stayed pending interlocutory appeal, and because

9

## 2. Judgment Sanctions

In explaining the basis for the Judgment Sanctions,[9] the trial court again noted Carl's counsel's false declaration. But it listed multiple other instances of sanctionable conduct as well, ranging from the Johnsons' continued misrepresentations to their advancing frivolous claims and filing duplicative and excessively lengthy documents. The court found that, among other things,

- Patricia had filed a "false" declaration stating, "I deny that the Release [i.e., Agreement] produced by Defendant in this case was executed by myself on my behalf" when evidence at trial conclusively established "that [she had] signed the Release" multiple times on behalf of herself and others;

---

the Johnsons' response to the show-cause order had included a motion to recuse, the trial court did not take any action on the threatened sanctions.

[9]As legal authority for the sanctions, the trial court cited "Rule 13 of the Texas Rules of Civil Procedure, Chapters 9 and 10 of the Texas Civil Practice & Remedies Code, and . . . the Court's inherent authority." *See* Tex. Civ. Prac. & Rem. Code Ann. § 9.011 (recognizing that signing of pleading constitutes the signatory's representation "after reasonable inquiry" that "the pleading is not . . . groundless and brought in bad faith," for harassment, or to "needless[ly] increase . . . the cost of litigation"), § 9.012 (authorizing sanctions for a violation of Section 9.011 unless Rule 13 or Section 10.004 applies), § 10.001 (providing that, by signing a pleading or motion, the signatory represents that, "after reasonable inquiry," each "claim . . . or other legal contention . . . is warranted by existing law or by a nonfrivolous argument," each "factual contention . . . has evidentiary support," each "denial . . . is warranted on the evidence," and the filing is not presented "to harass or to cause unnecessary delay or needless increase in the cost of litigation"); Tex. R. Civ. P. 13 (recognizing that signing of pleading constitutes certificate that, "after reasonable inquiry[,] the instrument is not groundless and brought in bad faith or . . . for the purpose of harassment" and authorizing sanctions for violation). The Johnsons do not challenge these legal grounds.

10

- Patricia's "false declaration [had been] filed as a 'verified defense' . . . in a pleading signed by [the Johnsons'] attorneys . . . [who] had actual knowledge that [the] declaration was false, yet filed the pleading anyway";

- the Johnsons' attorneys had filed multiple petitions that included causes of action for breach of the covenant of quiet enjoyment and intrusion on seclusion—claims "which were frivolous when filed"; and

- the Johnsons' counsel had "engaged in litigation tactics designed to needlessly increase costs to [the HOA]," such as filing "duplicative [documents with] hundreds of pages of excessive exhibits in response to [the HOA's] summary judgment motions."

Although the trial court initially imposed sanctions sua sponte at the trial's end, it subsequently granted the Johnsons' request for reconsideration and held a post-judgment hearing for the Johnsons to show cause why they should not be sanctioned for the conduct described.

At that show-cause hearing, the Johnsons attempted to justify their actions.[10] Carl's counsel again claimed that his declaration had been accurate, repeating his "strain[ed]" argument regarding the "meaning of . . . 'excluded.'" And he made a similar argument regarding Patricia's sworn declaration "deny[ing] that the Release [i.e., Agreement] produced by Defendant in this case was executed by [her]self on [her] behalf." According to counsel, this declaration did not deny that she had signed the Agreement, nor did it deny that she was bound by the Agreement. Rather, Carl's counsel stressed that the declaration was carefully worded to limit Patricia's denial to

_____

[10]Carl and his counsel testified as fact witnesses at the post-judgment show-cause hearing, as did an attorney representing the HOA.

11

those copies of the Agreement that had been (1) "produced by Defendant in th[e] case" as of the declaration's date and (2) executed by Patricia "on [her own] behalf," as opposed to having been signed on behalf of her children or others. Counsel noted that, at the time of the declaration, the HOA had produced multiple copies of the Agreement signed by Patricia, but it had yet to produce a copy signed by her solely "on [her own] behalf." The trial court questioned the relevance of this distinction, noting that the Agreement extended its terms not only to the minor but also to the adult signatory "on behalf of [her]self"[11] and pointing out that Patricia's declaration had been filed to support a verified defense. [Formatting altered.] The Johnsons' counsel acknowledged as much but insisted that, regardless, "her declaration [was] correct."

The Johnsons also attempted to explain the basis for their "frivolous" claims, including their claims for breach of the covenant of quiet enjoyment and intrusion on seclusion. Their counsel conceded that the Johnsons had asserted the same claims against Bearfoot and that those claims had been held to lack a legal or factual basis, but they framed the issue as a mistake and attempted to show why they had believed the claims had merit.

---

[11]The Agreement also stated—just above the signature line for the parent or guardian—"that they [i.e., the signatory] and the minor [we]re subject to all the terms of th[e] document."

12

Counsel took a slightly different approach when it came to the Johnsons' voluminous filings. The trial court noted that the Johnsons had filed "hundreds, if not thousands, of pages of responses" to the HOA's summary judgment motions with "the exhibits to all of those responses, 1 through 17, [being] the same document[s]" except for one exhibit to one motion, which was an "extra item interposed in the middle of 500 pages of other documents." Carl's counsel acknowledged as much but blamed the HOA for the duplication, pointing out that the HOA had chosen to challenge the Johnsons' causes of action in separate summary judgment motions.[12]

In short, the Johnsons' counsel claimed that their behavior had been appropriate and their claims well grounded. But after hearing the evidence, the trial court disagreed. It reaffirmed the Judgment Sanctions, concluding that "Plaintiffs' counsel do not appreciate that their tactics in this case were an abusive use of the judicial process" and that "[u]nless sanctioned[,] . . . counsel [we]re likely . . . [to] engage in similar improper conduct in the future." It ordered Carl and his counsel to pay $50,000 and Patricia and her counsel to pay another $50,000, explaining that such amounts "approximate[d] a disgorgement of fees paid by Plaintiffs' to their attorneys

---

[12]Counsel's explanation for the Johnsons' failure to appear at the prior show-cause hearing was similar in tone. *See supra* note 8. Carl's counsel insisted that such failure was not his fault because "[t]he case had been stayed" pending interlocutory appeal, so he had assumed that the hearing had been canceled. In fact, due to the stay, counsel insisted that "[t]here was no hearing" as far as he was concerned.

in this case calculated as $125 per hour times 400 hours (each) spent on the case," which was the hourly rate and time each of the Johnsons' counsel had estimated charging and expending.

## II. Discussion

The Johnsons raise three appellate issues, arguing that (1) the HOA's fees-as-damages award was erroneous because it was neither legally authorized nor segregated; (2) the trial court erred by refusing to submit a jury question on the Johnsons' affirmative defense of prior material breach; and (3) the sanctions orders were based on factually inaccurate findings and an improper measurement.[13] But the Johnsons ignore the evidence and legal rulings that—while unfavorable to them—support the challenged aspects of the judgment.

---

[13]Throughout their brief, the Johnsons offhandedly question other aspects of the trial court proceedings, including the absence of a jury question regarding their breach of the Agreement, the absence of a jury question on the element of causation, the HOA's alleged failure to "plead for attorney's fees under any purported contractual provision," the trial court's initial issuance of the Judgment Sanctions without a hearing, and the recipient of the sanctions awarded. Because the Johnsons do not expound on those criticisms or raise them in separate issues, we do not address them. *See* Tex. R. App. P. 38.1(f) (requiring appellant's brief to "state concisely all issues or points presented for review"), (i) (requiring brief to include "clear and concise argument for the contentions made, with appropriate citations to authorities"), 38.9 (explaining that briefs must "acquaint the court with the issues" and "present argument that will enable the court to decide the case"), 47.1 (limiting court's opinion to necessary and dispositive issues).

14

## A.     Contract Damages

The Johnsons first argue that (1) there was no contract or statute authorizing the HOA's recovery of attorney's fees and (2) the HOA failed to segregate its fees between recoverable and nonrecoverable claims.

### 1.     Legal Authorization for Fees

In their challenge to the legal authorization for the damages award, the Johnsons emphasize the American Rule,[14] the requirements surrounding a party's statutory right to recover attorney's fees in certain circumstances, and the precedent recognizing that statutorily authorized attorney's fees are not damages. They note the Agreement's indemnification provision only long enough to dismiss it out of hand, stating that it "does not allow for attorney's fees to any party under any circumstances."[15]   They neglect to mention, however, that we construed the Agreement in the opposite manner in their prior interlocutory appeal.[16]

---

[14]"[T]he American Rule . . . prohibits the recovery of attorney's fees from an opposing party in legal proceedings unless authorized by statute or contract." *Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex. 2013).

[15]In their discussion of the requirements for statutorily authorized attorney's fees, the Johnsons state, "[T]he indemnifying language in the Facilities Use Agreement covered damage to person or property caused by the Johnsons or their guests." The Johnsons do not explain their proposed interpretation of the Agreement's scope, though.

[16]Although our interpretation of the Agreement came at a preliminary stage when the parties' burdens of proof were different than they were at trial, the interpretation of an unambiguous contract is a matter of law. *See URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018).

There, we held that the Agreement required the Johnsons to pay the HOA's attorney's fees for claims "associated with" the Johnsons' use of the common amenities. *See Windsong*, 2024 WL 725523, at *5–6 & n.10 (concluding that the Johnsons had "agreed . . . 'to indemnify, defend, and hold harmless [the HOA] from all liability associated with' the Johnsons' use of these common areas" and that "[b]y filing a lawsuit against the HOA asserting claims and causes of action 'associated with' their use of the Windsong common areas, the Johnsons triggered their obligation to indemnify the HOA for its attorney's fees and costs"). The trial court applied this interpretation to the jury charge on remand, asking the jury to determine the "reasonable fee for the necessary legal services of [the HOA's] attorneys for their defense of the claims brought by [the Johnsons] in this case"—i.e., the amount of damage sustained by the HOA for the Johnsons' refusal to indemnify it. *See id.*

The Johnsons do not acknowledge this interpretation of the Agreement's indemnification provision. In fact, the Johnsons do not cite *Windsong* once in their 75-page brief. And because they do not address or challenge the foundational legal basis for the HOA's fees-as-damages award, this portion of the Johnsons' first issue fails.

16

## 2.  Scope of Indemnified Fees

The Johnsons' complaint regarding segregation of attorney's fees fails for much the same reason.[17]  They assert that "[t]he HOA failed to segregate attorney's fees between claims for which attorney['s] fees [we]re allowed and those for which attorney['s] fees [we]re not allowed," and as an example of a claim for which fees were not allowed, they point to their claim for money had and received.  But they forget to mention that we rejected their argument in the prior interlocutory appeal.

There, we noted the Johnsons' contention "that the indemnification clause d[id] not apply to some of their causes of action"—including money had and received and other allegations of "targeting, retaliation, and selective enforcement."  *Id.* at *6 n.10 (referencing causes of action regarding "targeting, retaliation, and selective enforcement" in particular); *see* Appellant's Brief at 32, 2024 WL 725523 (arguing that the Johnsons' claims "for example, [for] suit to enforce restrictive covenants or money had & received[,] or, for that matter, any allegation of targeting, retaliation, or selective enforcement," were not covered by the Agreement's indemnification clause).  But we disagreed with this contention, citing the "broad scope" of the indemnification provision and explaining that the relevant "claims all pertain[ed] to

---

[17]The Johnsons submitted a proposed jury question regarding the segregation of attorney's fees, but their question "identifie[d] two subsets [of fees], damage to person or property proximately caused by plaintiffs' acts and damages associated with plaintiffs' use of the facilities."  Nonetheless, we assume without deciding that the Johnsons preserved their challenge to the HOA's failure to segregate between recoverable and nonrecoverable claims.

the Johnsons' use of the Windsong Ranch common areas and the HOA's actions in regulating such use," so the claims were "clearly 'associated with' the Johnsons' use of the common areas." *Windsong*, 2024 WL 725523, at *6 n.10 (quoting Merriam-Webster.com definition of "associated"); *see Associated*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/associated (last visited Aug. 15, 2025) (defining "associated" as, among other things, "related [or] connected").

Once again, the Johnsons do not acknowledge *Windsong* or identify why we should reconsider it. Nor do they explain how their claim for money had and received—a claim centered on their alleged compliance with HOA rules at the community pool—was not "associated with [their] use of the [common amenities]." *See Windsong*, 2024 WL 725523, at *5–6 & n.10.

Therefore, we overrule this final portion of their first issue.[18]

**B.    Jury Question**

The same flaw plagues the Johnsons' second appellate issue. They assert that the trial court erred by refusing to submit a jury question regarding the HOA's prior material breach. Specifically, the Johnsons claim that the Agreement obligated the HOA to ensure that they could use the common amenities for "relaxation[] and other

---

[18]In passing, the Johnsons suggest other ways in which the HOA's fees should have been further segregated. Because the Johnsons do not expound on these suggestions, address whether their proposed methods of segregation were even possible, or raise their arguments as separate appellate issues, we need not address them. *See supra* note 13; *cf.* Tex. R. App. P. 38.1(f), (i), 38.9, 47.1.

18

activities" and that the HOA's "harass[ment]" and "[t]hreats" prevented them from enjoying the facilities so they were entitled to a jury question on prior material breach.

But the Johnsons do not acknowledge that, in the prior interlocutory appeal, we stated that "the HOA's only obligation under the Facilities Use Agreement [wa]s to provide the Johnsons access (via the issuance of access cards) to the Windsong Ranch common areas." *Id.* at *5. And we further noted that "the HOA['s] grant[ing] the Johnsons access to the common areas d[id] not appear to be in dispute." *Id.* This remained true following remand; the Johnsons did not dispute that they were given keycards to access the common amenities. The actions that the Johnsons pointed to as evidence of prior material breach—the HOA's creation of an unpleasant environment such that the Johnsons could not use the common areas for "relaxation"—would not, even if true, have constituted a breach of the Agreement. *See id.* And because the Johnsons do not acknowledge, address, or challenge our prior ruling clarifying the HOA's limited obligations under the Agreement, they do not identify any reason why that ruling should be reconsidered.

We overrule the Johnsons' second issue.

## C.   Sanctions Orders

In their final issue—and the main focus of their briefing—the Johnsons dispute the Sanctions Orders. They do not challenge the legal grounds cited by the

19

trial court for its orders,[19] the trial court's compliance with procedural requirements, or the court's findings regarding the sanctioned parties' motives. Rather, the Johnsons challenge the factual accuracy of some of the trial court's findings of sanctionable conduct[20] and the measurement that they claim the trial court relied upon to set the Judgment Sanctions at $50,000 each. But again, the Johnsons' complaints are largely undermined by their failure to acknowledge and address unfavorable aspects of the record.

### 1. Standard of Review

We review sanctions orders for an abuse of discretion and will affirm unless "the [trial] court acted without reference to any guiding rules and principles" such that its ruling is arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004); *see Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020); *Callaway v. Martin*, No. 02-16-00181-CV, 2017 WL 2290160, at *3 (Tex. App.—Fort Worth May 25, 2017, no pet.) (mem. op.). A "trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its

---

[19]The Pretrial Sanctions order did not specify a legal basis, but the HOA had moved for sanctions under Rule of Civil Procedure 13 and Chapter 10 of the Civil Practice and Remedies Code. As for the Judgment Sanctions, the trial court cited four legal grounds in its order: Rule 13, Chapters 9 and 10 of the Civil Practice and Remedies Code, and the court's inherent authority. The Johnsons do not challenge any of these legal grounds.

[20]The Johnsons seek reversal of the trial court's third show-cause order as well, but that order did not impose or result in any sanctions. *See supra* note 8. We therefore do not address it. *See* Tex. R. App. P. 47.1.

decision." *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *see Brewer*, 601 S.W.3d at 717; *Powell v. Fletcher*, No. 01-22-00640-CV, 2024 WL 4885846, at *4 (Tex. App.—Houston [1st Dist.] Nov. 26, 2024, no pet.) (mem. op.); *Callaway*, 2017 WL 2290160, at *3.

To determine whether a sanctions order is supported by some evidence, we review the entire record. *Powell*, 2024 WL 4885846, at *4; *Callaway*, 2017 WL 2290160, at *4. The trial court is in the best position to examine the sanctioned parties' credibility, and we defer to those credibility assessments. *See Powell*, 2024 WL 4885846, at *4 (affirming sanctions and noting that "[w]e defer to the credibility decision made by the trial court"); *Callaway*, 2017 WL 2290160, at *6 (holding trial court did not abuse its discretion by reconsidering sanctions and noting that "the trial court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given to their testimony"); *Canada v. Canada*, No. 02-11-00483-CV, 2013 WL 1759894, at *8 (Tex. App.—Fort Worth Apr. 25, 2013, no pet.) (mem. op.) (affirming trial court's decision not to award sanctions and noting that "[t]he trial court was in the best position to examine [the relevant party's] credibility").

Although we are not bound by the trial court's findings or conclusions in the sanctions context, when, as here, the trial court catalogues multiple instances of sanctionable conduct, we will "uphold the trial court's sanctions award if any of the sanctionable conduct in the order has support in the record." *Alwazzan v. Alwazzan*, 596 S.W.3d 789, 816–17 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *see Powell*,

21

2024 WL 4885846, at *5; *Dunavin v. Meador*, No. 2-07-230-CV, 2008 WL 2780782, at *4 (Tex. App.—Fort Worth July 17, 2008, no pet.) (mem. op.); *cf. Callaway*, 2017 WL 2290160, at *5 (recognizing that, when trial court orders sanctions pursuant to a party's motion, "[w]e may uphold the ruling . . . if any ground raised in the motion is supported by the record").

### 2. Evidentiary Support for Pretrial Sanctions

First, the Johnsons challenge the fact findings underlying the Pretrial Sanctions. They insist that Carl's counsel's declaration was accurate in its description of witness exclusion, arguing that counsel used the word "excluded" to refer to the witnesses' being asked to step out of the meeting room. But such parsing misses the point.

The word "exclude" has a certain meaning when used to describe witness testimony in the legal context. As the trial court explained at the show-cause hearing, "the meaning of excluded [requires] more than invoking the [R]ule" to remove the witness from the courtroom;[21] it means "[t]hey were prevented from testifying" by a court ruling. *See Exclusion*, Black's Law Dictionary (12th ed. 2024) (defining exclusion in evidentiary context as "[a] trial judge's determination that an item offered as evidence may not be presented to the trier of fact"); *see also* Tex. R. Evid. 103(a)

---

[21]"At the request of either party, . . . the witnesses on both sides shall be sworn and removed out of the courtroom to some place where they cannot hear the testimony as delivered by any other witness in the cause. This is termed placing witnesses under the rule." Tex. R. Civ. P. 267(a).

(clarifying requirements for a party to claim error "in a ruling to . . . exclude evidence").

The Johnsons do not acknowledge the legal meaning of "exclude"; they treat their definition of the word as the only reasonable understanding of counsel's declaration. But whether or not they acknowledge the word's legal meaning, it was reasonable for the trial court to interpret counsel's declaration in light of that meaning and to conclude that counsel intended to invoke it.

The declaration was a sworn statement from a licensed, practicing attorney. It was provided to the trial court as summary judgment evidence on multiple occasions in a legal proceeding. And it characterized a witness as "excluded" from a quasi-judicial evidentiary hearing that had occurred earlier in the case. The trial court thus reasonably construed the evidence-related statements made by legal counsel in a legal proceeding based on the legally understood meaning of "exclude." And at the pretrial show-cause hearing, the undisputed evidence showed a factual reality at odds with this legal term.

Carl's counsel acknowledged, and the audio recording confirmed, that the Johnsons had been given the opportunity to call witnesses at the HOA board meeting, and by choice, the Johnsons elected not to do so. No witness testimony was "excluded" in the legal sense. *Cf. Exclusion*, Black's Law Dictionary (12th ed. 2024).

The record thus supports the trial court's findings that Carl's counsel's declaration contained a false statement regarding the HOA board meeting and that

the declaration "strain[ed] the common meaning of the word[] . . . 'excluded'" in an "attempt[] . . . to mislead the Court." *Cf.* Tex. R. Civ. P. 13 (recognizing that signing of "pleading, motion, or other paper" constitutes certificate that "the instrument is not groundless"); Tex. Disciplinary Rules Prof'l Conduct R. 3.03(a) (recognizing attorney's duty of candor toward the tribunal and prohibiting attorney from "knowingly . . . mak[ing] a false statement of material fact or law" or "offer[ing] or us[ing] evidence"—such as a declaration offered to support a summary judgment motion—"that the lawyer knows to be false"); *Alwazzan*, 596 S.W.3d at 817 (affirming sanctions under Rule 13 when party filed false affidavit to support request for service by publication and pleaded false statements regarding residency); *In re Lewis*, No. 05-08-01541-CV, 2010 WL 177817, at *4 (Tex. App.—Dallas Jan. 20, 2010, no pet.) (mem. op.) (holding that evidence was sufficient to support Rule 13 sanctions when party's "sworn statement[s] in his rule 202 petitions w[ere] false"). We overrule this portion of the Johnsons' issue.

### 3. Support for Judgment Sanctions

The Johnsons next challenge the other fact findings supporting the Judgment Sanctions. They dispute the factual accuracy of many of the findings, explaining why, in their view, the trial court was wrong or their actions were justified. But again, their arguments are hindered by their failure to acknowledge or address the aspects of the record that are unfavorable to them.

24

For example, the Johnsons assert that Patricia's sworn declaration—in which she denied "that the [Agreement] produced by Defendant in this case was executed by [her]self on [her] behalf"—was accurate. But they do not acknowledge the reasons why the trial court labeled the declaration false. As the trial court noted at the post-judgment show-cause hearing, Patricia's sworn statement was filed to support a verified defense.[22] Although the Johnsons insisted that Patricia had not intended to deny being bound by the Agreement, if the declaration had—as the Johnsons claimed—merely pointed out that the HOA had yet to produce in discovery the copy of the Agreement that Patricia had signed solely on her own behalf, then the declaration would not have served as a basis for a verified defense. *Cf.* Tex. R. Civ. P. 93. As with Carl's counsel's declaration, the trial court did not abuse its discretion by interpreting the Johnsons' sworn filing in light of its legal context and by concluding that the Johnsons had intended for it to be so construed. The Johnsons' failure to acknowledge this rational interpretation of the declaration hinders their ability to challenge it on its merits.

Because Patricia's sworn misrepresentation—and the Johnsons' counsel's joint filing of it—was some evidence supporting the Judgment Sanctions, we could affirm

---

[22]In fact, the verified defense was untimely added, and the Johnsons moved for leave to file it, implicitly asserting that it merited an exception to the trial court's scheduling order. The trial court granted leave, and Patricia's verified defense remained part of the Johnsons' live pleading at the time of trial, though they claimed they had intended to withdraw the relevant pleading.

on this basis alone. *See Alwazzan*, 596 S.W.3d at 817 (affirming sanctions based on false statements in affidavit and petition); *Callaway*, 2017 WL 2290160, at *3 (affirming sanctions and recognizing that "an abuse of discretion does not occur when . . . some evidence of substantive and probative character supports [the trial court's] decision"). But other findings of sanctionable conduct support the Judgment Sanctions as well.

Of particular note, the Johnsons dispute the trial court's characterization of their claims for breach of the covenant of quiet enjoyment and intrusion on seclusion as "frivolous when filed," and they argue that the claims were based on valid factual and legal theories. But in *Bearfoot*, we held that the Johnsons' nearly identical claims against Bearfoot lacked a factual or legal basis.[23] *See Bearfoot*, 2024 WL 2202033, at *5–9. And even though the Johnsons' parallel claims against the HOA were not

---

[23]Specifically, as relevant here, we held that:

- the Johnsons' claim for breach of the covenant of quiet enjoyment lacked a factual basis and they cited no authority to support their allegation that a "de facto landlord–tenant relationship" existed based on "the restrictive covenant of the community"; and

- "[t]he Johnsons' [intrusion on seclusion] claim [wa]s based entirely on alleged actions that occurred while they were at the community pool[, b]ut the Johnsons had no reasonable expectation of privacy in this communal area" so "their intrusion-on-seclusion claim lack[ed] a legal basis."

*Bearfoot*, 2024 WL 2202033, at *5–9. When the Johnsons initially filed these claims, they asserted them against the "Defendants" generally without distinguishing between the HOA and Bearfoot. And although the Johnsons dispute the trial court's characterization of the claims as frivolous, they have yet to cite any authority showing the existence of a landlord–tenant relationship and have yet to explain how they had a reasonable expectation of privacy in the common amenities.

before us at the time, we noted that those claims "involve[d] the same facts and issues." *Id.* at \*10–11 (dismissing the Johnsons' concern of issue preclusion but acknowledging the similarity between their claims against Bearfoot and their still-pending claims against the HOA).[24]

The Johnsons themselves acknowledged *Bearfoot*'s ramifications at the post-judgment show-cause hearing. Carl's counsel recognized that the Johnsons' claim for breach of the covenant of quiet enjoyment should not have been asserted against the HOA[25] and that their claim for intrusion on seclusion could not survive in light of *Bearfoot*. Yet, on appeal, the Johnsons do not acknowledge *Bearfoot* and instead insist that their claims were factually and legally grounded. Because they ignore *Bearfoot*, they do not distinguish it or fill in the gaps that it identified in their causes of action. We thus cannot conclude that the trial court abused its discretion by applying *Bearfoot* to the Johnsons' substantially similar claims against the HOA and labeling the claims as "frivolous." *Cf.* Tex. R. Civ. P. 13 (clarifying that "[g]roundless . . . means no basis

---

[24]Our holding here is not based on issue preclusion. As we noted in *Bearfoot*, that concept does not "preclude litigation of [issues] that a trial court explicitly separates or severs from th[e] action." *Id.* at \*11.

[25]Carl's counsel argued that, based on his understanding of *Bearfoot*, "it's not that [the Johnsons] d[id]n't have that easement [of quiet enjoyment] . . . but [that they] brought it against the wrong defendant." Counsel did not elaborate further on this understanding of *Bearfoot*, nor did he identify who he believed the correct defendant to be. *But see id.* at \*8 n.7 (questioning "whether a residential tenant can assert a breach-of-the-covenant-of-quiet-enjoyment claim following the passage of Property Code Section 92.061"). Regardless, counsel conceded that, at a minimum, the Johnsons "should have sued somebody else rather than the HOA."

in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law").

Plus, while the Johnsons vehemently dispute the trial court's findings regarding Patricia's "false" declaration and the "frivolous" nature of their claims, they entirely ignore another finding of sanctionable conduct: that involving their "multiple duplicative filings of hundreds of pages of excessive exhibits in response to [the HOA's] summary judgment motions." *Cf.* Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (providing that, by signing a motion, the signatory represents that it is not presented "to harass or to cause unnecessary delay or needless increase in the cost of litigation"). And the very face of the clerk's record supports this finding.

The record shows that, in a single week, the Johnsons filed more than 10,000 pages of summary judgment responses, supplemental responses, and exhibits. Within these 10,000 pages, the same exhibits were filed five times. The trial court pointed to such filings as an example of the Johnsons' attempts "to needlessly increase costs to [the HOA]," and given the filings' voluminous and duplicative nature, the trial court's conclusion was not unreasonable.

This body of sanctionable conduct is sufficient to support the challenged Judgment Sanctions. *See Powell*, 2024 WL 4885846, at *5 (noting that appellant "challenge[d] some but not all the trial court's [sanctions] findings" and that "[w]e must uphold the trial court's sanctions order if it is correct on 'any legal theory supported by the record'"); *Alwazzan*, 596 S.W.3d at 816–17 (recognizing that "even if

28

the trial court made some findings of non-sanctionable conduct, the sanctions will nonetheless be upheld if they are based on other findings of sanctionable conduct supported in the record"). We thus need not address the factual accuracy of the remainder of the trial court's sanctions findings, *see* Tex. R. App. P. 47.1, and we overrule this portion of the Johnsons' issue.

### 4. Measurement for Judgment Sanctions

In the final portion of their issue, the Johnsons assert that "it appears that a basis for the [Judgment S]anctions is the Johnsons' $50,000 settlement with Bearfoot in a prior lawsuit," and they challenge the propriety of this measurement. They claim that it was unjust to tie their sanctions to "a voluntary settlement approved by the trial court . . . in a prior case,"[26] and for the same reason, that the yardstick was not directly related to the punishable conduct.

But when the trial court reaffirmed its Judgment Sanctions, it clarified that the $50,000 "sanctions amounts approximate[d] a disgorgement of fees paid by Plaintiffs[] to their attorneys in this case calculated as $125 per hour times 400 hours (each) spent on the case."[27] The Johnsons do not discuss this yardstick. And because they do not

---

[26]The Johnsons repeatedly complain that the trial court should not have considered their conduct in prior litigation at all. But at the post-judgment show-cause hearing, the Johnsons themselves offered evidence of their conduct in prior litigation.

[27]Originally, the Judgment Sanctions referenced the Bearfoot settlement as an alternative rationale for the $50,000 amounts. But the trial court's subsequent order

29

discuss it, they do not explain why it is excessive, improper, or unrelated to their sanctionable conduct. Thus, the Johnsons' complaint fails, and we overrule it.

### III. Conclusion

Having overruled the Johnsons' three appellate issues, we affirm the trial court's judgment, including its imposition of sanctions. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: August 29, 2025

---

reaffirming the Judgment Sanctions tied the amounts solely to the Johnsons' attorney's fees.